UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOROTHY CHAPPELL-JOHNSON** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 1:06CV00314-RCL |
| | ) |
| **MARTIN GRUENBERG** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT'S MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff, Dorothy Chappell-Johnson, [hereinafter "Chappell-Johnson or "Plaintiff"] a current employee of the Federal Deposit Insurance Corporation ("FDIC") in its Headquarters Office contends that she experienced unlawful discrimination proscribed by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 ("Title VII"), based upon her race (black) and reprisal. Plaintiff's complaint further alleges that she experienced unlawful discrimination, based upon her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. After ample discovery, however, the plaintiff has put forth no evidence that she suffered prohibited discrimination in any form.

As set forth below, and as demonstrated in the Rule 56.1 Statement of Undisputed Facts accompanying defendant's Motion for Summary Judgment, there is no genuine issue as to any material fact on any plaintiff's claims. See Fed. R. Civ. P. 56. Defendant therefore respectfully requests that judgment be entered for defendant as a matter of law, and that plaintiff's claims be dismissed with prejudice.

**II.     FACTUAL BACKGROUND[1]**

At all times relevant to the instant action, Plaintiff has been employed by the Federal Deposit Insurance Corporation ("FDIC or "Agency") in its Division of Administration ("DOA") at its Washington, D.C. headquarters.

Plaintiff began her employment with the FDIC on June 17, 1990 and is currently employed as a "Human Resources Specialist (Benefits)" at Grade CG-9.  Plaintiff is African-American, over the age of forty (d.o.b. 11/24/45) and, prior to the filing of the formal EEO complaint of discrimination in this action, had participated in protected activity against Defendant.

Specifically, Plaintiff filed her first formal EEO complaint on December 16, 1999, alleging discrimination based upon race and age.  Plaintiff's second and third formal EEO complaints, filed on June 15, 2001and September 9, 2003, alleged discrimination based upon race, color, age, and retaliation.

The fourth formal EEO complaint of Plaintiff, which forms the basis of the instant action, was filed on August 20, 2004 and alleges discrimination based upon race, age and retaliation.[2]

In the present case, Plaintiff applied for the position of Human Resources Specialist (Information Systems and Compensation) Grade CG-0201-11/12 in DOA.  The position was announced under "Vacancy Announcement No. 2003-HQ-2419, effective November 20, 2003.

Originally, seven individuals, including Plaintiff, applied for the subject position and six were rated as "qualified".  Prior to the interview process, two of the original applicants withdrew

---

[1] The facts set forth in this section of defendant's memorandum are for information only.  For evidentiary references in support of defendant's motion herein, please refer to defendant's Statement of Undisputed Facts, pursuant to Rule 7.1 (h), accompanying defendant's Motion for Summary Judgment.

[2] Plaintiff has filed two additional formal EEO complaints against the FDIC following the complaint which underlies the instant action.

2

themselves from consideration. As a result, the four remaining candidates, including Plaintiff, were interviewed for the position.

An interview panel, consisting of three DOA personnel, conducted "structured interviews"[3] of the four candidates. The panel was comprised of Shirley Purnell, who was also the "Selecting Official" for the subject position, Eugene Bell and Natalie Tyce. Two of the panel members, Ms. Purnell and Mr. Bell, were over the age of forty at the time of the interviews and all three are African-Americans.

Following the interview process, the panel members discussed the candidates with each other and identified their choice of the top candidate. Ms. Purnell and Mr. Bell identified Patricia Quattrone, the ultimate selectee, as their candidate. Ms. Tyce identified Ms. Coleista Salatich as her first choice. None of the three panel members selected Plaintiff as their first choice. After due consideration, including reference checks of Ms. Quattrone and Ms. Salatich, Ms. Purnell selected Ms. Quattrone for the subject position, which was approved by the "Approving Official," Miguel Torrado on March 8, 2004.

Plaintiff alleges that she first learned of her non-selection on April 6, 2004 (Complaint at ¶ 7.) and first contacted an EEO counselor on May 18, 2004. After participating in mediation, which did not resolve Plaintiff's claims, Plaintiff filed her formal complaint of discrimination on August 20, 2004.

Plaintiff requested a hearing before an Administrative Judge on February 24, 2005, but withdrew that request on September 28, 2005. Defendant Agency issued its Final Agency

---

[3] "Structured interviews" were utilized by the FDIC during the time period in question, pursuant to a "Consent Decree" arising from an earlier class action brought against the FDIC. See, Exhibit "B", attached to the Declaration of Shirley Purnell herein.

3

Decision on January 4, 2006, finding that Plaintiff was not discriminated against in any manner. Plaintiff filed the instant complaint with this Court on February 22, 2006.

Although citing three bases of discrimination, race (black), age (DOB 11/24/45) and retaliation, Plaintiff's entire action revolves around one event, her non-selection for the position described above.

### III.    STANDARD OF REVIEW

#### A.    Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Anderson v, Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In determining whether there exists a genuine issue of material fact, the Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id*., at 249-50. Indeed, in order to withstand summary judgment, the non-moving party may not rest upon mere allegations or denials. *Id*., at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. *Id*., at 247-48. There is no genuine issue of material fact if the relevant evidence of record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the party opposing summary judgment. *Id*., at 248. If the submitted evidence is of such a character that it would not

4

permit a reasonable fact finder to find in favor of the non-moving party, summary judgment is appropriate. *Id.*, at 251.

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the non-moving party to show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegation," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

### B.   Allocations of Burdens of Production and Persuasion

The burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973), governs the analysis of Plaintiff's discrimination and retaliation claims. Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000). Under this framework, the Plaintiff has the initial burden of proving by a preponderance of the evidence a "*prima facie*" case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the Plaintiff is able to establish a *prima facie* case, the burden shifts to the Defendant to produce credible evidence that its actions were taken for a legitimate, nondiscriminatory reason. *Id.* If the Defendant meets this burden of production, the burden shifts back to the Plaintiff to present evidence that the stated reason was pretextual. *Id.* To do so, the Plaintiff must show "both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993); See *also*, Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, at 1183 ("It is not enough for the Plaintiff to show that the reason

5

given for a job action is not just, fair, or sensible. He must show that the explanation given is a phony reason.") (internal citations omitted). At all times, the Plaintiff retains the ultimate burden of persuasion to demonstrate that she was in fact the victim of intentional discrimination. Burdine, *supra*, 450 U.S. at 252-53.

### C. Deference Due to Agency Decisions

Lastly, concerning the scope of review in employment discrimination cases, the employment discrimination statutes did not transform federal courts into review boards for local employment decisions. "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v, Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986), cert. denied, 479 U.S. 1066 (1987)). To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).

### IV. PLAINTIFF'S PRIMA FACIE CASE

As previously stated above, Plaintiff alleges unlawful discrimination on three distinct basies, to wit, race, reprisal and age. See, Complaint at paragraph 1. Despite the multiple theories of discrimination, Plaintiff's entire action herein is premised upon her non-selection for a single position which she applied for with Defendant. See, Complaint at paragraph 7.

To establish a *prima facie* case of race, discrimination, Plaintiff must show that she: (1) belonged to a statutorily-protected group[4] and (2) suffered an adverse employment action (3) under circumstances giving rise to an inference of discrimination. *See*, Stella v. Mineta, 284

---

[4] Defendant does not dispute that Plaintiff belongs to a statutorily protected class in that she is an African-American who was over 40 years of age at all relevant times.

6

F.3d 135, at 145 (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999); Harding v. Gray, 9 F.3d 150, at 154; Dobbs v. Roche, 329 F. Supp.2d 33 (D.D.C. 2003). The same requirements apply to claims under the ADEA. *See*, O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311, n.2 (1996); Beeck v. Federal Express Corp., 81 F. Supp. 2d 48, 53 (D.D.C. 2000).

Under Title VII, the McDonnell Douglas burden-shifting scheme governs a court's assessment of whether an employer may be found liable for adverse actions allegedly taken in retaliation for the employee's engaging in protected activity. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1993). Under the three-stage analysis established in McDonnell Douglas, the plaintiff must demonstrate, by a preponderance of the evidence, that a rational fact-finder could conclude that the adverse action was taken for discriminatory reasons. McDonnell Douglas, 411 U.S. 802-804.

In order to make out a prima facie case of retaliation, Plaintiff must demonstrate that: (1) she engaged in a statutorily protected activity, known to the employer, (2) that she suffered an adverse personnel action, and (3) that there as a causal connection between the protected activity and the adverse personnel action.[5]
Berger v. Iron Workers Reinforced Rodmen Local 201, 843 F. 2d 1395, 1423 (D.C. Cir. 1988); Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985); McKenna v. Weinberger, 729 F.2d 783, 790 (D.C. Cir. 1984).

Therefore, for purposes of this Motion for Summary Judgment and pursuant to the authority cited in Section III, supra, the primary issues before the Court are:

1.  As to all of Plaintiff's theories of liability, whether Defendant had a

---

[5] Defendant does not dispute that Plaintiff engaged in "protected activity" prior to her application for the position in question, nor that Plaintiff was not selected for the position in question. Defendant does dispute that there is any causal connection between Plaintiff's protected activity and her non-selection.

"legitimate non-discriminatory reason" for Plaintiff's non-selection, which is not "pretextual"; and

    2.    As to Plaintiff's claim of retaliation, whether she has stated a "prima facie" case of retaliation; specifically, whether she has or can establish a "casual connection between her protected activity and the adverse personnel action," as required under the citied authority, supra.

As will be demonstrated below, Defendant submits that Plaintiff's non-selection was unequivocally based upon legitimate, non-discriminatory grounds which were not pretextual. Notwithstanding this fact, Defendant further submits that Plaintiff's claim of retaliation must fail as she cannot demonstrate any casual connection between her prior protected activity and her non-selection for the subject position.

### V.    AGRUMENT

    **A.    Plaintiff's Prima Facie Case of Retaliation**

Defendant has conceded above that Plaintiff engaged in protected activity prior to her application for the position in question and was not selected for same. Defendant submits that Plaintiff cannot demonstrate evidence of any causal connection between her protected activity and her non-selection.

The case of Hastie v. Henderson, 121 F. Supp 2d 72 (D.D.C., 2000) stated the following regarding that plaintiff's retaliation claim:

> "The causal connection element of the *prima facie* case may be established by proof that that "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." Hastie, at 78, citing Mitchell v. Baldridge, 759 F.2d 80, 86 (D.C. Cir. 1985).

8

The Court in <u>Hastie</u>, supra, found that a period of "two years between the events prevents the finding of a causal connection. <u>Hastie</u>, at 80. In support of that finding, the Court referenced similar cases which found "no causal connections" at varying intervals: "period of eight months does not strongly suggest causal link" . . . "period of approximately one year too long to infer retaliation" . . . "period of almost six months too long to support an inference" . . . "period of less than four months too long to support an inference." (citations omitted) <u>Hastie</u>, at 80.

A number of subsequent decisions in the District of Columbia have made similar rulings. <u>See</u>; <u>Kwon v. Billington</u>, 370 F. Supp 2d 177, 187 (D.D.C. 2005) two years too long for inference; <u>Oliver-Simon v. Nicholson</u>, 384 F. Supp. 2d 298, 314 (D.D.C. 2005) nine and seventeen months too long for inference; <u>Singleton v. Potter</u>, 402 F. Supp. 2d 12, 35 (D.D.C. 2005) "The District Court for the District of Columbia has held that a matter of weeks, and of three to five months is a short enough time lapse between the protected activity and the alleged retaliatory conduct to establish a causal connection" (citations omitted). . . "Accordingly, the greater the time that has elapsed between the protected activity and the alleged acts of discrimination, the more difficult it is for a complainant to justify an inference of causal connection between the two".

In the instant case, Plaintiff first met with an EEO counselor regarding her claims of discrimination in May, 2004 and filed her formal complaint of discrimination on August 20, 2004. <u>See</u>, Complaint at paragraph 5. According to the attached Declaration of Susan Berman, Plaintiff filed her third of three prior EEO complaints on September 9, 2003. <u>See</u>, Declaration of Susan Berman at ¶4.

Utilizing the earlier time of Plaintiff's first contact with an EEO counselor in this matter, May, 2004, an eight month period had elapsed since the filing of her immediate past formal EEO

9

complaint. Utilizing the dates between the instant formal EEO complaint and the September 9, 2003 filing, nearly one year had elapsed between the two filings.

Pursuant to the above-cited authority, Defendant submits that Plaintiff cannot establish even the inference of a causal connection between her prior protected activity and her claim of retaliation herein. As a result, Plaintiff cannot make out a prima facie case of retaliation and said claim should be summarily dismissed.

In the event that the Court finds that Plaintiff has established a prima facie case of retaliation, Defendant respectfully requests the Court consider the "legitimate, non-discriminatory reasons" for the action taken in this matter, contained in the following section.

### B.      Plaintiff's Race and Age Discrimination Claims

As previously described above, for purposes of this motion, Defendant concedes that Plaintiff has stated a prima facie case of race and age discrimination. Also, as stated above, in non-selection cases, both types of said discrimination claims are established by the same standard, to wit, (1) being a member of the respective "protected class", (2) applying for and being qualified for the subject position, and (3) being rejected for the position under circumstances giving rise to an inference of discrimination. See, Stella v. Mineta, 284 F.3d 135, 144-45 (D.C. Cir 2002), (citing McDonnell Douglas, 411 U.S. at 802); Harding v. Gray, 9 F.3d 150, 152 (D.C. Cir. 1993).

In the event that plaintiff is found to have established a prima facie case of retaliation, in addition to age or racial discrimination in connection with her non-selection, the burden of production shifts to the defendant to articulate a legitimate non-discriminatory/non-retaliatory reason for the challenged action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981) (defendant's burden articulated for Title VII cases). The defendant's burden is one of

10

production, not of proof. See Aka v. Washington Hospital Center, 156 F.3d, 1284, 1288 (D.C. Cir. 1998). ("[I]n producing nondiscriminatory reasons for its challenged action, the employer is not obligated to support these reasons with objective evidence sufficient to satisfy the preponderance of the evidence standard"). Thus, the defendant's burden is satisfied if it simply explains what it has done or produces evidence of legitimate, nondiscriminatory/non-retaliatory reasons. St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Notably, defendant is not required to prove that the agency made the wisest choice, but only that the reasons for the decision were non-discriminatory. See Davis v. State University of New York, 802 F.2d 638, 641 (2d Cir. 1986) (citing Burdine, 450 U.S. at 258-59).

Moreover, the ultimate burden of persuading the court that the defendant/employer intentionally discriminated or retaliated remains at all times with the plaintiff/employee. Hicks, 509 U.S. at 507; Aka, 156 F.3d at 1288. Thus, even if the plaintiff establishes a prima facie case, summary judgment is still available to the defendant if it sufficiently articulates a nondiscriminatory/non-retaliatory reason for the challenged action, and the plaintiff fails to present objective evidence that undermines the defendant's proffered explanation for its actions and/or provides independent evidence of discriminatory/retaliatory statements or attitudes on the part of the employer. See Aka, 156 F.3d at 1289. Further, while "plaintiff's discrediting of an employer's stated reason for its employment decision is entitled to considerable weight," a plaintiff who creates a genuine issue of material fact with respect to the employer's proffered reason will not always be deemed to have presented enough evidence to survive summary judgment. Id. at 1290. As the D.C. Circuit has stated:

> "There may be no legitimate jury questions as to discrimination in a case in which a plaintiff has created only a weak issue of material facts as to whether the employer's explanation is untrue, and there is abundant independent evidence in the record that no discrimination has occurred."

11

Id. at 1291.

Finally, a plaintiff cannot create a factual issue of pretext based merely on personal speculation of discriminatory or retaliatory intent. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) ("a mere unsubstantiated allegation . . . creates no genuine issue of material fact and will not withstand summary judgment") (quoting Harding v. Gray, 9 F3.d 150, 154 (D.C. Cir. 1993)); Phillips v. Holladay Property Services, Inc., 937 F, Supp. 32, 35 n.2 (D.D.C. 1996), aff'd., 1997 WL 411695 (D.C. Cir. 1997) ("[A] plaintiff's denial of defendant's articulated reason without producing substantiation for the denial is insufficient to withstand a motion for summary judgment.").

In a discrimination case dealing with a non-selection, where the plaintiff argued that "[her] evidence of pretext is that she is so clearly more qualified for the [subject] position than the selectee that an inference of discrimination arises from the mere fact that she was not selected." Hammond v. Chao, 383 F.Supp.2d 47, (D.D.C. 2005), the Court stated:

". . . a plaintiff cannot satisfy her burden of demonstrating pretext simply based on [her] own subjective assessment of [her] own performance." (citation omitted). "A plaintiff has the duty to put forth evidence of discrimination, not to quibble about the candidates relative qualifications." (citation omitted) Hammond, supra, at 57.

In the instant case, there is no dispute that Plaintiff is African-American, that she is over forty years of age (presently sixty-one) and that she participated in protected activity prior to the within action. Complaint, at ¶1. In addition, there is no dispute that Plaintiff applied for and was referred as a qualified candidate for FDIC Vacancy Announcement No. 2003-HQ-2419. Complaint, at ¶7.

Further, there is no dispute that Plaintiff was interviewed for the subject position and was not selected. Complaint, at ¶7. Finally, there is no dispute that Shirley Purnell, the "selecting official," selected a Caucasian woman, younger than Plaintiff, for the subject position. Complaint, at ¶7. It should be noted, however, that while younger than Plaintiff, the selectee for the position was over the age of forty at the time of her selection. See, Defendant's Statement of Material Facts hereto, No. 43.

As a result, in addition to Defendant's argument that Plaintiff has not established a prima facie case of retaliation, supra, the issue before the Court is whether Defendant's reasons for selecting Ms. Quattrone for the subject position were legitimate, non-discriminatory and not-pretextual. Conversely stated, the issue is: whether Plaintiff's non-selection for the subject position was discriminatory and retaliatory and that Defendant's reasons therefor are pretextual.

Defendant submits that the record in this case clearly demonstrates that all four candidates for the subject position were interviewed pursuant to Defendant's established "Structured Interview" process. See, Declaration of Shirley Purnell at paragraph 5.

Each candidate was asked the same questions by the same panel. Two of the panel members, Ms. Purnell and Mr. Bell, ranked the selectee, Ms. Quattrone as their "top" candidate. See, Purnell Declaration at paragraph 5.

While not ranking Ms. Quattrone as her "top" candidate, Ms. Tyce, the former incumbent of the subject position, did not select Plaintiff as her "top" choice, but instead, ranked a third candidate, Ms. Salatich, as her "top" candidate. See, Declaration of Natalie Tyce at paragraph 9.

The result is that, after interviewing the four candidates for the subject position and reviewing the individual application packages, none of the three panel members ranked Plaintiff as their "best qualified" candidate. Plaintiff's complaint herein neither references nor alleges any

13

impropriety in the interview process, per se. Plaintiff's focus in this action centers on her non-selection by Ms. Purnell. Complaint, at ¶'s 9, 11, and 13.

As a result, Plaintiff sounds exactly like the plaintiff in Hammond, supra, to wit, that she was so superior to the selectee, that her mere non-selection creates an inference of discrimination. Aside from the bravado of such a contention, it is not legally sufficient to establish discrimination or retaliation. Further, Defendant submits that Plaintiff's own words belie the contention that there is a factual basis for her claims of discrimination in this action. When asked to describe her reasons for believing that her non-selection was discriminatory, Plaintiff states in her "Formal Complaint of Discrimination" herein:

> "It was discriminatory because of age, race and mainly reprisal. Numerous whites within the corporation have been favorited (sic) and selected in the same situation." See, Formal Complaint of Discrimination, Agency Docket No. FDICEO-040041, Exhibit "B" to Defendant's Motion herein.

Quoting Fischbach, supra, the Court in Hammond stated:

> "Even if the Court suspects that a job applicant was victimized by [ ] poor selection procedures, it may not "second-guess" an employer's personnel decision absent demonstrably discriminatory motive. (citation omitted). Title VII, it bears repeating, does not authorize a federal court to become a super-personnel department that re-examines an entity's business decisions." (citation omitted) Hammond, at 58.

The case of Hussain v. Principi, 344 F. Supp. 2d 86 (D.D.C. 2004), involving discrimination claims arising from multiple non-selections, held in part:

> "As stated by the D.C. Circuit, '[I]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair or sensible. He must show that the explanation given is a phony reason.'" (citation omitted). Hussain, at 98, citing Fischbach, supra at 1183.

The Court in Hussain, citing Waterhouse v. District of Columbia, 124 F. Supp. 2d 1,7 (D.D.C. 2000), stated:

14

"[P]lantiff's perception of h[im]self and of h[is] work performance is not relevant. It is the perception of the decision maker which is relevant." Hussain, at 98.

In the case at bar, there has been no evidence adduced which would show, or tend to show, that any of the three panel members bore any animus, prejudice or negativity toward Plaintiff. In fact, prior to the subject interviews, Mr. Bell did not know anything, personally or professionally, about Plaintiff. This includes any knowledge of Plaintiff's prior protected activity. See, Declaration of Eugene Bell at paragraph 5.

As previously stated, the selection decision in the present case was not "open and shut." There was not unanimous agreement among the three panel members as to who the "best qualified" candidate was. Interestingly, though, the three panel members did agree, by their actions, that Plaintiff was not the "best-qualified candidate. Without any evidence whatsoever, Plaintiff, as the Plaintiff in Hammond, ultimately concluded that her non-selection was discriminatory on three separate grounds (race, age, reprisal). Complaint, at ¶ 1. "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason." St. Mary's Honor Center, 509 U.S. at 515 (emphasis in original). It is not enough, in other words, to disbelieve the employer, the fact finder must believe the plaintiff's explanation of intentional discrimination". Id, at 519.

Plaintiff's opinion of herself aside, the claims of discrimination in this action are unsupported speculation and contrary to the evidence provided herein. The attached Declarations of Shirley Purnell, Natalie Tyce and Eugene Bell, clearly demonstrate that the interview and selection process involved herein was, fair, balanced and procedurally correct.

Further, there is no allegation, let above evidence, that any of the panel members, including "Selecting Official" Shirley Purnell, demonstrated any animus, racial, age-related, or retaliatory, during the interview process. As previously stated, Plaintiff simply disagrees with

15

the fact that she was not selected for the subject position, then makes the quantum leap to label that as discriminatory.

The evidence in this case, considered under the cited authority, does not support Plaintiff's conclusion.

WHEREFORE, it is respectfully requested that this Honorable Court grant Defendant's Motion for Summary Judgment and that Plaintiff's complaint herein be dismissed.

Respectfully submitted,

/s/_____

Victor E George
Counsel
550 17th Street, NW, Room VS-E6004
Washington, DC  20429
CA Bar No. 89595
703-562-2395 (office)
703-562-2482 (fax)
vgeorge@fdic.gov

Daniel H. Kurtenbach
Counsel
550 17th Street, NW, Room VS-D7066
Washington, DC  20429
DC Bar No. 426590
703-562-2565 (office)
703-562-2475 (fax)
dkurtenbach@fdic.gov