UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DOROTHY CHAPPELL-JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-0314 (RCL) |
| MARTIN GRUENBERG, | ) | |
| Chairman, Federal Deposit | ) | |
| Insurance Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

STATEMENT OF GENUINE ISSUES

Pursuant to Local Rule 7.1(h), plaintiff hereby submits her statement of genuine issues in response to the "Statement of Material Facts Not in Dispute" filed by defendant in support of its Motion for Summary Judgment.

I.    General Response to Defendant's Statements.

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists." *Mitchell v. DCX, Inc.*, 274 F.Supp. 2d 33, 39 (D.D.C. 2003). In a discrimination and retaliation action such as this, the material issues are the defendant's motives, whether defendant took adverse employment actions against Chappell-Johnson, and the legitimacy of any alleged non-discriminatory reasons for those actions. Yet, for the most part, the majority of facts recited in defendant's statement are not "material" to these issues. Thus, even if those facts are accepted, they do not entitle defendant to judgment. *See United States v. Winstead*, 74 F.3d 1313, 1320 (D.C.Cir 1996) ("material fact" defined as "a fact that would be of importance to a reasonable person in making a decision about a particular matter or transaction."). As such, defendant's statements do not satisfy the requirement of Local Rule 7 (h)

that defendant provide a "a statement of *material* facts as to which the moving party contends

there is no genuine issue." Therefore, defendant's motion for summary judgment must be denied.

## II.    Genuine Issues of Fact

1.    *Whether Dorothy Chappell-Johnson was the best qualified candidate for the Human Resource Specialist position.*

The position description for the vacant position at the CG-11 level had previously been

the position description for the position of Payroll/Personnel System Specialist, GG-301-9. PX

9, Position Description, Human Resources Specialist (Information Systems and Compensation),

CG-201-11 (Line 4(b) - "Previously - Payroll/Personnel System Specialist, GG-301-9"). Ms.

Chappell-Johnson had performed all of those duties while also serving as a CG-9 and CG-11

Supervisory Payroll/Personnel Systems Specialist for several years. *Compare* PX 2, Chappell-

Johnson Application at 1-4, *with* PX 8, Vacancy Announcement # 2003-HQ-2419 (Human

Resources Specialist (Information Systems and Compensation)), CG-0201-11/12 at 2; *see also*,

PX 6 (Shirley Purnell Dep.) at 235-243.

The duties identified in the summary section of the vacancy announcement were duties

that Ms. Chappell-Johnson had performed during the period 1990-1996, when she served

successively as Supervisor, Payroll/Personnel System Specialist at the CG-9 and CG-11 levels.

*See* PX 2, Chappell-Johnson Application at 2-4 and PX 3, Position Description, Supervisory

Payroll/Personnel System Specialist, GG-301-11. Chappell-Johnson had performed those duties

successfully. PX 4, (Natalie Tyce Dep.) at 28 (rated Chappell-Johnson at no less than

"successful" level).

Chappell-Johnson was uniquely qualified to serve in the CG-11, Human Resources

Specialist position.  *See* PX 6 (Shirley Purnell Dep.) at 178-190.  Moreover, Chappell-Johnson had served as a Personnel Management Specialist since January 1997 - a period of nearly seven years prior to applying for the vacant position of Human Resources Specialist (Information Systems and Compensation.  *See* PX 2 at 1.

In addressing the vacancy announcement's automated human resource information systems KSA ("3.  Ability to conduct comprehensive analyses of automated human resource information systems."), Ms. Chappell-Johnson's application revealed that she had extensive experience working with a wide range of both internal FDIC and NFC automated personnel and payroll systems.  PX 2, Chappell-Johnson Application, at 6-7

2.       *Whether the selectee - a younger white female - was less qualified than Chappell-*
         *Johnson.*

Patricia Quattrone had no experience with the FDIC personnel and pay systems nor with any of the FDIC payroll/personnel automation systems, most notably CHRIS; nor had she ever served as a Payroll/Personnel Systems Specialist.  *See* PX 10 (Patricia Quattrone Application) (did not work previously for the FDIC).  In responding to the vacancy announcement's KSA #3 ("Ability to conduct comprehensive analyses of automated human resource information systems"), Ms. Quattrone's application indicated that she had "to research personnel and payroll processing issues utilizing data from the National Finance Center," but her application does not address any experience or work with Commerce Department or other governmental agency automated human resource systems.  PX 10 (Patricia Quattrone Application).  Therefore, in one of the critical KSAs, Ms. Quattrone did not have a level of experience comparable to Ms. Chappell-Johnson, who had worked for years with both the NFC automated system and the

unique FDIC automated human resources systems.

3.    *Whether a jury could find that Purnell was motivated by discrimination when she treated Chappell-Johnson less favorably than she treated the selectee - a younger white female.*

There are issues of material fact regarding whether Purnell treated Chappell-Johnson markedly less fair than she treated Quattrone, who was a younger, white female.  Purnell was dismissive of Chappell-Johnson's accomplishments and experience as reflected in Chappell-Johnson's application/resume.  Purnell testified that she did not believe that Chappell-Johnson had performed the duties that were stated in her application/resume. PX 6 (Purnell Dep.) at 241-43, 304-305.  Moreover, in her affidavit provided during the EEO investigation, Ms. Purnell stated that she was "not sure that [Chappell-Johnson] performed the full gamut of duties and responsibilities described in the vacancy announcement."  PX 5 (Purnell Affidavit, dated December 15, 2004) at ¶ 14.

In deposition testimony while referring to Chappell-Johnson's application, Purnell testified that employees "often put everything that's in their positions descriptions in their applications . . . they don't always perform the full range of duties as described in their position descriptions."  PX 6 (Purnell Dep.) at 308.  However, Purnell fully accepted, without reservation, the contents of Ms. Quattrone's application.  Moreover, Purnell acknowledged that if she had inquired of Chappell-Johnson's former supervisor(s) (which Purnell did not do, PX 6 (Purnell Dep.) at 304), she would have verified the accuracy of Ms. Chappell-Johnson's application/resume.  PX 6 (Purnell Dep.) at 308-309.  Purnell chose not to inquire of Chappell-Johnson's former supervisor - Natalie Tyce - who was also a member of the interview panel.  As such, Purnell deliberately chose not to verify Chappell-Johnson's credentials.  Yet, Purnell did

- 4 -

conduct a reference check on the younger, white selectee - Ms. Quattrone.

There are issues of fact regarding the manner and process that Purnell made her selection in this matter. Ms. Purnell stated that she made her selection "after considering each of the candidate's [sic] applications and interview responses to the structured questions." DX, Shirley Purnell Declaration, dated July 19, 2007, at ¶¶ 5, 7. However, she only "fully considered" the applications of Ms. Quattrone and Ms. Salatich, but did not fully consider Ms. Chappell-Johnson's application. In addressing the manner in which she evaluated the candidates' responses to two of the five KSAs ("Ability to analyze, evaluate and make recommendations to senior level management officials" and "Ability to establish and maintain customer service and smooth working relationships with a variety of offices and individuals at all levels."), Purnell stated that "KSAs four and five were better evaluated through reference checks." PX 5 (Purnell Affidavit, dated December 15, 2004) at ¶ 8. Purnell testified that none of the structured interview questions addressed KSAs 4 or 5. PX 6 (Purnell Dep.) at 300. Purnell only conducted reference checks on the top two candidates. PX 6 (Purnell Dep.) at 301; *see also* PX 6 (Purnell Dep.) at 304. Indeed, Purnell testified that she did not evaluate Chappell-Johnson against KSAs four and five during the selection process. PX 6 (Purnell Dep.) at 303. Chappell-Johnson was the only one of the top candidates for the vacant CG-11/12 position of Human Resources Specialist whose application was deliberately not fully considered by Purnell.

4.      *Whether the interview panel process was conducted fairly.*

At the outset of the interview process, but before any interviews were conducted, Ms. Purnell pulled out Ms. Quattrone's application and said, "I like this person, this is who I want." PX 14 (Natalie Tyce Affidavit, dated November 18, 2004) at ¶ 9; *but see* PX 6 (Purnell Dep.) at

226-227 (no recall of saying that); PX 13 (Bell Dep.) at 82-83 (no recall of Purnell saying that).

According to Ms. Tyce, there was no further discussion by the panel members about the

applicants or the applications before, during, or after the interview panel.  PX 4 (Natalie Tyce

Dep.) at 86-87, 145, 141-143.  Mr. Bell and Ms. Purnell contend that there was a discussion of

the candidates and individual panel member's recommendations.  PX 13 (Bell Dep.) at 64-66,

83-84; DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9; PX 6 (Purnell Dep.) at 227-230,

286.

In addition, Ms. Tyce testified that she did not have any conversations about Ms.

Chappell-Johnson with Ms. Purnell.  PX 4 (Natalie Tyce Dep.) at 43.  However, Purnell testified

that during the interview process Ms. Tyce told her that, when Chappell-Johnson worked for Ms.

Tyce, Chappell-Johnson's duties involved "time and attendance kinds of things."  PX 6 (Purnell

Dep.) at 144-45.

5.    *Whether Purnell's failure to select Chappell-Johnson was motivated by reprisal for*
      *Chappell-Johnson's earlier and ongoing EEO activity.*

Purnell, the selecting official for the position vacancy that is at issue in this case, was

aware of and involved in addressing Chappell-Johnson's prior EEO complaints.  Purnell was

specifically involved in the preparation of a settlement offer from the FDIC to Chappell-Johnson.

PX 6 (Purnell Dep.) at 173-74, 197-98; *see also* PX 5 (Purnell Affidavit, dated December 15,

2004) at ¶ 18.  In addition, during the time of period that Ms. Chappell-Johnson was being

interviewed but not selected for the vacant position at issue in this civil matter, Ms. Purnell had

signed out Chappell-Johnson's Official Personnel Folder.  PX 1 (Chappell-Johnson Affidavit,

dated November 12, 2004) at ¶ 6 ("In February or March 2004, I requested an opportunity to

review my Official Personnel Folder and discovered it was signed out to Shirley [Purnell]. She

would have known of my prior EEO activity because it was at that time that the legal dept. [sic]

was making a settlement offer for the EEO complaint I filed in 1998."). Ms. Chappell-Johnson

was interviewed for the vacant position in mid-February 2004, and Ms. Purnell formalized her

selection of Ms. Quattrone on March 5, 2004. *See* PX 7, FDIC Form 2100/15, Candidate

Selection Form.

### III.    Specific Responses to "Defendant's Statement of Material Facts as to Which There Is No Genuine Issue."

Most of the statements listed in "Defendant's Statement of Material Facts as to Which

There Is No Genuine Issue" do not address these material questions, but merely restate the claims

of defense witnesses. To the extent that defendant's statements touch on the material facts in this

case, there is ample evidence to dispute those.

Defendant's Fact No. 8.  In the formal EEO complaint underlying this action, Fact No. 5 above,
Plaintiff states that she believes she was discriminated against because, "It was discriminatory
because of age, race and mainly reprisal. Numerous whites within the corporation have been
favored (sic) and selected in this same situation." Formal Complaint of Discrimination, Agency
Docket No. FDICE0-040041. Exhibit "A" to Defendant's Motion herein.

**Plaintiff's Response:**  Admitted, to the extent that defendant has accurately represented

what is contained in Plaintiff's Formal Complaint of Discrimination. However, for the purposes

of the instant motion for summary judgment, plaintiff asserts that there are sufficient issues of

material fact that would allow a finder of fact to reject defendant's alleged legitimate, non-

discriminatory reason for failing to select plaintiff for the vacant Human Resources Specialist

(Information Systems and Compensation) position.

Defendant's Fact No. 11.  Two to of the six qualified candidates described in No. 10 above
withdrew from consideration for the subject position. The four remaining candidates, including

Plaintiff, were interviewed for the subject position. Declaration of Shirley Purnell, Exhibit "A" thereto at T6.

**Plaintiff's Response:** Plaintiff asserts that the first sentence is immaterial to the consideration of summary judgment. Admitted, as to the second sentence.

Defendant's Fact No. 12. Defendant utilizes a "Structured Interview" process for competitive vacancies and did so in the instant case. Declaration of Shirley Purnell at ¶6 and Exhibit "B" thereto.

**Plaintiff's Response:** There are issues of fact about the manner that Purnell utilized the structured interview process, when she refused to allow interview panel members to discuss individual applicant's interviews and did not engage in any discussion of the panel members' inputs after all interviews were conducted. *See* PX 15 (Natalia Tyce Affidavit, dated November 18, 2004) at ¶ 9 ("I like this person, this is who I want."); *but see* PX 6 (Purnell Dep.) at 226-227 (no recall of saying that); PX 14 (Bell Dep.) at 82-83 (no recall of Purnell saying that). *See also* PX 4 (Natalie Tyce Dep.) at 86-87 (testifying that there were no discussions about applicants by the interview panel members), 145 (testifying that Purnell told her that the panel "was not allowed to discuss the candidate"), 141 (testifying that at the end of the interview process neither she nor Mr. Bell told Purnell who their top two candidates were), 142-143 (testifying that she "started to make a comment" and Ms. Purnell "corrected [her] that [the panel wasn't] supposed to talk about it or [they] could not talk about it"); *but see* PX 14 (Bell Dep.) at 64-66 (testifying that there was a discussion of each candidate at the end of each applicant's interview and each panel member's ranking of applicants in order of number one through three), 83-84 (the panel members discussed their individual ranking of candidates and there was a consensus of the top person); DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9 ("At the conclusion of all of the

interviews, Ms. Tyce and I identified our top candidate to Ms. Purnell for her consideration.");

PX 6 (Purnell Dep.) at 227-230 (testifying that the panel discussed each applicant after each

interview, that all three of the panel members discussed their recommendations, and the three

panel members came to a "consensus decision on who the top two candidates were"), 286

(testifying that the panel came to a "unanimous" consensus of the top two candidates and that she

would be surprised to know that Quattrone was not one of Tyce's top two candidates).

Defendant's Fact No. 17. The "Guidance" document described in No. 13 above provides, "The
Selecting Official is encouraged to discuss interviews with panel members and is required to
review all documentation, including any interview notes." Declaration of Shirley Purnell,
Exhibit "B" thereto at page 2.

   **Plaintiff's Response:** There are issues of fact about the manner that Purnell utilized the

structured interview process, when she refused to allow interview panel members to discuss

individual applicant's interviews and did not engage in any discussion of the panel members'

inputs after all interviews were conducted. *See* PX 15 (Natalia Tyce Affidavit, dated November

18, 2004) at ¶ 9 ("I like this person, this is who I want."); *but see* PX 6 (Purnell Dep.) at 226-227

(no recall of saying that); PX 14 (Bell Dep.) at 82-83 (no recall of Purnell saying that). *See also*

PX 4 (Natalie Tyce Dep.) at 86-87 (testifying that there were no discussions about applicants by

the interview panel members), 145 (testifying that Purnell told her that the panel "was not

allowed to discuss the candidate"), 141 (testifying that at the end of the interview process neither

she nor Mr. Bell told Purnell who their top two candidates were), 142-143 (testifying that she

"started to make a comment" and Ms. Purnell "corrected [her] that [the panel wasn't] supposed to

talk about it or [they] could not talk about it"); *but see* PX 14 (Bell Dep.) at 64-66 (testifying that

there was a discussion of each candidate at the end of each applicant's interview and each panel

member's ranking of applicants in order of number one through three), 83-84 (the panel members discussed their individual ranking of candidates and there was a consensus of the top person); DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9 ("At the conclusion of all of the interviews, Ms. Tyce and I identified our top candidate to Ms. Purnell for her consideration."); PX 6 (Purnell Dep.) at 227-230 (testifying that the panel discussed each applicant after each interview, that all three of the panel members discussed their recommendations, and the three panel members came to a "consensus decision on who the top two candidates were"), 286 (testifying that the panel came to a "unanimous" consensus of the top two candidates and that she would be surprised to know that Quattrone was not one of Tyce's top two candidates).

There are also issues of fact regarding whether Purnell properly regarded Chappell-Johnson's application/resume. Purnell simply dismissed Chappell-Johnson's outstanding credentials, without taking the necessary step of verifying the accuracy of Chappell-Johnson's application/resume by contacting her former supervisor. PX 6 (Purnell Dep.) at 241-43 (did not believe Chappell-Johnson had performed the duties described in her application/resume), 304-305 (same), 308, 308-309 (noting that if she checked with Chappell-Johnson's supervisor that would verify information in her application); *see also* PX 5 (Purnell Affidavit, dated December 15, 2004) at ¶ 14 ("not sure that [Chappell-Johnson] performed the full gamut of duties and responsibilities described in the vacancy announcement"). Purnell did check Quattrone's references, but not Chappell-Johnson's. Moreover, Purnell did not question the representations of the other candidates in their applications.

Defendant's Fact No. 19. The "Guidance" document described in No. 13 above, provides, "Members of an interview panel are free to openly discuss their assessment together, but are not required to reach consensus in their assessments of a candidate's responses. All candidates should

be assessed fairly, without bias, and against the established benchmarks." Declaration of Shirley
Purnell, Exhibit "B" thereto at page 2.

      **Plaintiff's Response:** There are issues of fact about the manner that Purnell utilized the
structured interview process, when she refused to allow interview panel members to discuss
individual applicant's interviews and did not engage in any discussion of the panel members'
inputs after all interviews were conducted. *See* PX 15 (Natalia Tyce Affidavit, dated November
18, 2004) at ¶ 9 ("I like this person, this is who I want."); *but see* PX 6 (Purnell Dep.) at 226-227
(no recall of saying that); PX 14 (Bell Dep.) at 82-83 (no recall of Purnell saying that). *See also*
PX 4 (Natalie Tyce Dep.) at 86-87 (testifying that there were no discussions about applicants by
the interview panel members), 145 (testifying that Purnell told her that the panel "was not
allowed to discuss the candidate"), 141 (testifying that at the end of the interview process neither
she nor Mr. Bell told Purnell who their top two candidates were), 142-143 (testifying that she
"started to make a comment" and Ms. Purnell "corrected [her] that [the panel wasn't] supposed to
talk about it or [they] could not talk about it"); *but see* PX 14 (Bell Dep.) at 64-66 (testifying that
there was a discussion of each candidate at the end of each applicant's interview and each panel
member's ranking of applicants in order of number one through three), 83-84 (the panel members
discussed their individual ranking of candidates and there was a consensus of the top person);
DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9 ("At the conclusion of all of the
interviews, Ms. Tyce and I identified our top candidate to Ms. Purnell for her consideration.");
PX 6 (Purnell Dep.) at 227-230 (testifying that the panel discussed each applicant after each
interview, that all three of the panel members discussed their recommendations, and the three
panel members came to a "consensus decision on who the top two candidates were"), 286

(testifying that the panel came to a "unanimous" consensus of the top two candidates and that she would be surprised to know that Quattrone was not one of Tyce's top two candidates).

Defendant's Fact No. 21. The "Guidance" document described in No. 13 above provides, "The Selecting Official should rely on the interview documentation, any discussions with other members of the interview panel and the application materials submitted by the candidates to make a final selection. The selection official should then prepare the Selection Recommendation Form (FDIC Form 2100-15) and forward it to the Approving Official." Declaration of Shirley Purnell, Exhibit "B" thereto at page 2.

Plaintiff's Response: There are issues of fact about the manner that Purnell utilized the structured interview process, when she refused to allow interview panel members to discuss individual applicant's interviews and did not engage in any discussion of the panel members' inputs after all interviews were conducted. *See* PX 15 (Natalia Tyce Affidavit, dated November 18, 2004) at ¶ 9 ("I like this person, this is who I want."); *but see* PX 6 (Purnell Dep.) at 226-227 (no recall of saying that); PX 14 (Bell Dep.) at 82-83 (no recall of Purnell saying that). *See also* PX 4 (Natalie Tyce Dep.) at 86-87 (testifying that there were no discussions about applicants by the interview panel members), 145 (testifying that Purnell told her that the panel "was not allowed to discuss the candidate"), 141 (testifying that at the end of the interview process neither she nor Mr. Bell told Purnell who their top two candidates were), 142-143 (testifying that she "started to make a comment" and Ms. Purnell "corrected [her] that [the panel wasn't] supposed to talk about it or [they] could not talk about it"); *but see* PX 14 (Bell Dep.) at 64-66 (testifying that there was a discussion of each candidate at the end of each applicant's interview and each panel member's ranking of applicants in order of number one through three), 83-84 (the panel members discussed their individual ranking of candidates and there was a consensus of the top person); DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9 ("At the conclusion of all of the

- 12 -

interviews, Ms. Tyce and I identified our top candidate to Ms. Purnell for her consideration.");
PX 6 (Purnell Dep.) at 227-230 (testifying that the panel discussed each applicant after each
interview, that all three of the panel members discussed their recommendations, and the three
panel members came to a "consensus decision on who the top two candidates were"), 286
(testifying that the panel came to a "unanimous" consensus of the top two candidates and that she
would be surprised to know that Quattrone was not one of Tyce's top two candidates).

There are also issues of fact regarding whether Purnell properly regarded Chappell-
Johnson's application/resume. Purnell simply dismissed Chappell-Johnson's outstanding
credentials, without taking the necessary step of verifying the accuracy of Chappell-Johnson's
application/resume by contacting her former supervisor. PX 6 (Purnell Dep.) at 241-43 (did not
believe Chappell-Johnson had performed the duties described in her application/resume), 304-
305 (same), 308, 308-309 (noting that if she checked with Chappell-Johnson's supervisor that
would verify information in her application); *see also* PX 5 (Purnell Affidavit, dated December
15, 2004) at ¶ 14 ("not sure that [Chappell-Johnson] performed the full gamut of duties and
responsibilities described in the vacancy announcement"). Purnell did check Quattrone's
references, but not Chappell-Johnson's. Moreover, Purnell did not question the representations
of the other candidates in their applications.

Defendant's Fact No. 32. In accordance with Fact No. 17 above, the "Selecting Official," Shirley
Purnell, discussed the interviewees with the other panel members. Declaration of Shirley Purnell
at ¶5; Declaration of Eugene Bell at ¶9.

Plaintiff's Response: There are issues of fact about the manner that Purnell utilized the
structured interview process, when she refused to allow interview panel members to discuss
individual applicant's interviews and did not engage in any discussion of the panel members'

inputs after all interviews were conducted. *See* PX 15 (Natalia Tyce Affidavit, dated November 18, 2004) at ¶ 9 ("I like this person, this is who I want."); *but see* PX 6 (Purnell Dep.) at 226-227 (no recall of saying that); PX 14 (Bell Dep.) at 82-83 (no recall of Purnell saying that). *See also* PX 4 (Natalie Tyce Dep.) at 86-87 (testifying that there were no discussions about applicants by the interview panel members), 145 (testifying that Purnell told her that the panel "was not allowed to discuss the candidate"), 141 (testifying that at the end of the interview process neither she nor Mr. Bell told Purnell who their top two candidates were), 142-143 (testifying that she "started to make a comment" and Ms. Purnell "corrected [her] that [the panel wasn't] supposed to talk about it or [they] could not talk about it"); *but see* PX 14 (Bell Dep.) at 64-66 (testifying that there was a discussion of each candidate at the end of each applicant's interview and each panel member's ranking of applicants in order of number one through three), 83-84 (the panel members discussed their individual ranking of candidates and there was a consensus of the top person); DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9 ("At the conclusion of all of the interviews, Ms. Tyce and I identified our top candidate to Ms. Purnell for her consideration."); PX 6 (Purnell Dep.) at 227-230 (testifying that the panel discussed each applicant after each interview, that all three of the panel members discussed their recommendations, and the three panel members came to a "consensus decision on who the top two candidates were"), 286 (testifying that the panel came to a "unanimous" consensus of the top two candidates and that she would be surprised to know that Quattrone was not one of Tyce's top two candidates).

Defendant's Fact No. 33.   At the conclusion of the interview process, Shirley Purnell and Eugene Bell identified Patricia Quattrone as their "top" candidate. Declaration of Shirley Purnell, at ¶5; Declaration of Eugene Bell at ¶9.

   **Plaintiff's Response:** There are issues of fact about the manner that Purnell utilized the

structured interview process, when she refused to allow interview panel members to discuss

individual applicant's interviews and did not engage in any discussion of the panel members'

inputs after all interviews were conducted. *See* PX 15 (Natalia Tyce Affidavit, dated November

18, 2004) at ¶ 9 ("I like this person, this is who I want."); *but see* PX 6 (Purnell Dep.) at 226-227

(no recall of saying that); PX 14 (Bell Dep.) at 82-83 (no recall of Purnell saying that). *See also*

PX 4 (Natalie Tyce Dep.) at 86-87 (testifying that there were no discussions about applicants by

the interview panel members), 145 (testifying that Purnell told her that the panel "was not

allowed to discuss the candidate"), 141 (testifying that at the end of the interview process neither

she nor Mr. Bell told Purnell who their top two candidates were), 142-143 (testifying that she

"started to make a comment" and Ms. Purnell "corrected [her] that [the panel wasn't] supposed to

talk about it or [they] could not talk about it"); *but see* PX 14 (Bell Dep.) at 64-66 (testifying that

there was a discussion of each candidate at the end of each applicant's interview and each panel

member's ranking of applicants in order of number one through three), 83-84 (the panel members

discussed their individual ranking of candidates and there was a consensus of the top person);

DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9 ("At the conclusion of all of the

interviews, Ms. Tyce and I identified our top candidate to Ms. Purnell for her consideration.");

PX 6 (Purnell Dep.) at 227-230 (testifying that the panel discussed each applicant after each

interview, that all three of the panel members discussed their recommendations, and the three

panel members came to a "consensus decision on who the top two candidates were"), 286

(testifying that the panel came to a "unanimous" consensus of the top two candidates and that she

would be surprised to know that Quattrone was not one of Tyce's top two candidates).

Defendant's Fact No. 36. In accordance with Fact No. 21, Shirley Purnell evaluated the four

interviewees based upon their respective application materials, their responses to the interview questions, individually and as compared to the other candidates and for the two "top" candidates, the reference checks she conducted of them. Declaration of Shirley Purnell at ¶9 and Exhibit "A" thereto, at T's 6, 7, 8, and 17.

**Plaintiff's Response:** There are issues of fact about the manner that Purnell utilized the structured interview process, when she refused to allow interview panel members to discuss individual applicant's interviews and did not engage in any discussion of the panel members' inputs after all interviews were conducted. *See* PX 15 (Natalia Tyce Affidavit, dated November 18, 2004) at ¶ 9 ("I like this person, this is who I want."); *but see* PX 6 (Purnell Dep.) at 226-227 (no recall of saying that); PX 14 (Bell Dep.) at 82-83 (no recall of Purnell saying that). *See also* PX 4 (Natalie Tyce Dep.) at 86-87 (testifying that there were no discussions about applicants by the interview panel members), 145 (testifying that Purnell told her that the panel "was not allowed to discuss the candidate"), 141 (testifying that at the end of the interview process neither she nor Mr. Bell told Purnell who their top two candidates were), 142-143 (testifying that she "started to make a comment" and Ms. Purnell "corrected [her] that [the panel wasn't] supposed to talk about it or [they] could not talk about it"); *but see* PX 14 (Bell Dep.) at 64-66 (testifying that there was a discussion of each candidate at the end of each applicant's interview and each panel member's ranking of applicants in order of number one through three), 83-84 (the panel members discussed their individual ranking of candidates and there was a consensus of the top person); DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9 ("At the conclusion of all of the interviews, Ms. Tyce and I identified our top candidate to Ms. Purnell for her consideration."); PX 6 (Purnell Dep.) at 227-230 (testifying that the panel discussed each applicant after each interview, that all three of the panel members discussed their recommendations, and the three

panel members came to a "consensus decision on who the top two candidates were"), 286

(testifying that the panel came to a "unanimous" consensus of the top two candidates and that she

would be surprised to know that Quattrone was not one of Tyce's top two candidates).

There are also issues of fact regarding whether Purnell properly regarded Chappell-

Johnson's application/resume.  Purnell simply dismissed Chappell-Johnson's outstanding

credentials, without taking the necessary step of verifying the accuracy of Chappell-Johnson's

application/resume by contacting her former supervisor.  PX 6 (Purnell Dep.) at 241-43 (did not

believe Chappell-Johnson had performed the duties described in her application/resume), 304-

305 (same), 308, 308-309 (noting that if she checked with Chappell-Johnson's supervisor that

would verify information in her application); *see also* PX 5 (Purnell Affidavit, dated December

15, 2004) at ¶ 14 ("not sure that [Chappell-Johnson] performed the full gamut of duties and

responsibilities described in the vacancy announcement").  Purnell did check Quattrone's

references, but not Chappell-Johnson's.  Moreover, Purnell did not question the representations

of the other candidates in their applications.

Defendant's Fact No. 37.  Following the deliberations outlined in Fact No. 36, Selecting Official
Shirley Purnell selected Patricia Quattrone for the position described in No. 9 above. Declaration
of Shirley Purnell at ¶7.

**Plaintiff's Response:**  There are issues of fact regarding whether Purnell followed the

deliberations outlined in Fact No. 36, above, particularly regarding whether she properly

regarded Chappell-Johnson's application/resume.  Purnell simply dismissed Chappell-Johnson's

outstanding credentials, without taking the necessary step of verifying the accuracy of Chappell-

Johnson's application/resume by contacting her former supervisor.  PX 6 (Purnell Dep.) at 241-43

(did not believe Chappell-Johnson had performed the duties described in her application/resume),

304-305 (same), 308, 308-309 (noting that if she checked with Chappell-Johnson's supervisor that would verify information in her application); *see also* PX 5 (Purnell Affidavit, dated December 15, 2004) at ¶ 14 ("not sure that [Chappell-Johnson] performed the full gamut of duties and responsibilities described in the vacancy announcement").  Purnell did check Quattrone's references, but not Chappell-Johnson's.  Moreover, Purnell did not question the representations of the other candidates in their applications.

Defendant's Fact No. 38.  In accordance with Fact No. 21 above, Shirley Purnell completed a "Candidate Selection Form (FDIC Form 2100-15) and submitted it to the "Approving Official," Miguel Torrado who approved the selection of Patricia Quattrone on March 8, 2004. Declaration of Shirley Purnell at ¶7 and Exhibit "C" thereto.

**Plaintiff's Response:**  There are issues of fact regarding whether Purnell followed the procedures outlined in Fact No. 21, above, particularly regarding whether she utilized the structured interview process, when she refused to allow interview panel members to discuss individual applicant's interviews and did not engage in any discussion of the panel members' inputs after all interviews were conducted.  *See* PX 15 (Natalia Tyce Affidavit, dated November 18, 2004) at ¶ 9 ("I like this person, this is who I want."); *but see* PX 6 (Purnell Dep.) at 226-227 (no recall of saying that); PX 14 (Bell Dep.) at 82-83 (no recall of Purnell saying that).  *See also* PX 4 (Natalie Tyce Dep.) at 86-87 (testifying that there were no discussions about applicants by the interview panel members), 145 (testifying that Purnell told her that the panel "was not allowed to discuss the candidate"), 141 (testifying that at the end of the interview process neither she nor Mr. Bell told Purnell who their top two candidates were), 142-143 (testifying that she "started to make a comment" and Ms. Purnell "corrected [her] that [the panel wasn't] supposed to talk about it or [they] could not talk about it"); *but see* PX 14 (Bell Dep.) at 64-66 (testifying that

there was a discussion of each candidate at the end of each applicant's interview and each panel member's ranking of applicants in order of number one through three), 83-84 (the panel members discussed their individual ranking of candidates and there was a consensus of the top person); DX, Eugene Bell Declaration, dated July 18, 2007, at ¶ 9 ("At the conclusion of all of the interviews, Ms. Tyce and I identified our top candidate to Ms. Purnell for her consideration."); PX 6 (Purnell Dep.) at 227-230 (testifying that the panel discussed each applicant after each interview, that all three of the panel members discussed their recommendations, and the three panel members came to a "consensus decision on who the top two candidates were"), 286 (testifying that the panel came to a "unanimous" consensus of the top two candidates and that she would be surprised to know that Quattrone was not one of Tyce's top two candidates).

There are also issues of fact regarding whether Purnell properly regarded Chappell-Johnson's application/resume. Purnell simply dismissed Chappell-Johnson's outstanding credentials, without taking the necessary step of verifying the accuracy of Chappell-Johnson's application/resume by contacting her former supervisor. PX 6 (Purnell Dep.) at 241-43 (did not believe Chappell-Johnson had performed the duties described in her application/resume), 304-305 (same), 308, 308-309 (noting that if she checked with Chappell-Johnson's supervisor that would verify information in her application); *see also* PX 5 (Purnell Affidavit, dated December 15, 2004) at ¶ 14 ("not sure that [Chappell-Johnson] performed the full gamut of duties and responsibilities described in the vacancy announcement"). Purnell did check Quattrone's references, but not Chappell-Johnson's. Moreover, Purnell did not question the representations of the other candidates in their applications.

Respectfully submitted,


_____/s/_____
David H. Shapiro, D.C. Bar # 961326
James E. Simpson, D.C. Bar # 482870
Swick & Shapiro, P.C.
1225 Eye Street, N.W.
Suite 1290
Washington, DC  20005
(202) 842-0300
Fax (202) 842-1418

Attorneys for Plaintiff