# PLAINTIFF'S EXHIBIT 1

AFFIDAVIT OF DOROTHY CHAPPELL-JOHNSON

DISTRICT OF COLUMBIA

I, Dorothy Chappell-Johnson (race: African-American), 58 years old (DOB: November 24, 1945), Human Resources Assistant, CG-202-08, Division of Administration, Human Resources Division, Compensation and Benefits Branch, Federal Deposit Insurance Corporation (FDIC), make the following statement freely and voluntarily to Turna R. Lewis, who has identified herself to me as an EEO Contract Investigator for the FDIC, investigating a complaint of discrimination filed by Dorothy Chappell-Johnson, knowing that this statement is not confidential and may be shown to an interested party. I hereby solemnly swear or affirm:

1.      I have been employed with the FDIC since 1990. My current position title is Human Resources Assistant, Grade 8, (but I am a CG-9 Personnel Management Specialist who was RIF'd to the Grade 8 position.). I began in this position in September 2003, a little over a year go. I was placed in this position because of a Reduction in Force (RIF), but will keep my salary for two years.   As of June 2004, my immediate supervisor is Gregory Talley, Chief of Benefits Section and Miguel Torrado, Director of Human Resources Branch is my second level supervisor. I have had two other supervisors since being in the Benefits Unit, Ed Chmielowski (second level supervisor) and Joyce Yamasaki (detailed after Ed was taken out of the Unit, detailed for a 90-day period). I was seriously ill for a period of two-and-a-half weeks, from the middle of October 2004, to approximately the middle of November 2004. As a result, I was unable to participate in the investigation until now.

2.      Before the RIF, I was a Personnel Management Specialist, Grade 9. I was in that position for approximately six years, from 1996 to 2003, when I was RIf'd.

3.      I applied for the position of Human Resources Specialist (Information Systems and Compensation), CG 0201-11/12, position advertised under Vacancy Announcement Number 2003-HQ-2419. I applied in December 2003 and hand-delivered my application (a resume, SF-171, and most recent performance appraisal) to the Personnel Operations Section, located at 1730 Pennsylvania Avenue. My performance appraisal was for the period August 02-August 03 was rated "pass". The performance appraisals are evaluated at either "pass" or "fail". I learned that I was not selected on April 6, 2004.

4.      I believe that I was not hired for the position because of my race (African-American), age: 58, and reprisal for filing previous EEO activity. I had previously filed an EEO complaint in 1998 that is still pending. I was part of a class action filed by African-Americans at FDIC because during a RIF only African-Americans were negatively affected. The Agency made sure that Whites on the RIF list were placed. I was told that my position was a surplus position and I was not needed, but after leaving the Section, I was doing the same work and since being placed in Employee Benefits in September 2003, I have assisted in helping to do the same work. My work was given to a CG-11 and a CG-13, who are both White women, but I have continued to assist them in

the completion of the duties. I could never get a promotion to the level, although I was still performing the duties. I believe that I was better qualified than the person selected, a White woman.

5.    I believe my age is a factor because of the comments made to me. It has been mentioned to me "why don't you retire—you have the years;" "why don't you take the buyout?" I told them that I need a full check. I have the age, but not the years to get a full check. Even my supervisor during the RIF, Dave Harrington, said: "why aren't you taking the buyout, we thought you were taking the buyout." People keep asking my why I do not retire.

6.    I believe that reprisal is a factor because of my prior EEO activity. Shirley Purnell, the selecting official was aware that I had previously filed a discrimination complaint in 2003. I also filed a complaint in 1998 and minorities had filed a class action against FDIC that we won. I opted out of the class action and engaged in discussions with FDIC to settle the complaint I filed in 1998. Any information requested to settle my complaint filed in 1998 had to go through Shirley. She would have known about the complaint I filed in 1998 because she would have been contact person for information requested. The agency made me an offer in 2003 related to the complaint I filed in 1998. Pay had to be computed and Shirley would have been the person to request records and direct staff to compute back pay. She would have been the person to respond to the legal department's request for back pay information. Shirley would also be the contact person to provide information to the legal department for the complaint I filed in 2003. In February or March 2004, I requested an opportunity to review my Official Personnel Folder and discovered it was signed out to Shirley. She would known of my prior EEO activity because it was at that time that the legal dept. was making a settlement offer for the EEO complaint I filed in 1998.

7.    I was interviewed for the position by Shirley Purnell and by Natalie Tyce (former supervisor when I was in the position of Supervisor, Payroll Personnel Systems Specialist, Grade 11). The interview lasted about 30-45 minutes and I was mainly asked questions about most difficult situations I worked in, and to provide examples of how I would handle hypothetical work situations. Very little was asked from the KSA's for the position. I guess some of the questions were relevant, in their own way relevant to the position. I believe that questions about the most difficult thing that you handled was not particularly relevant because situation may have occurred 10 years ago. There were not enough questions asked that were relevant to the position.

I thought that I did well in the interview. I also asked questions for exmple, what were they looking for. Shirley responded that she was looking for someone who can handle records, compute pay, handle pay charts, and someone who had knowledge of FDIC pay chart and salary information. I knew that I possessed this knowledge. I had held the same position as a grade 11 from 1990-1996 in my previous position—Payroll Personnel Systems Specialist Supervisor. I supervised up to 12 employees at one time, but I handled the computations back pay and etc. I supervised six or seven employees after the

reorganization. I maintained the responsibility for all pay-related duties. I also handled time and attendance issues (was not included in the position applied for). I had all of the skills that Shirley said she was looking for. I had experience in those areas and more. I believe that I was better qualified than the person who was selected.

8.    I believe that the selecting official was Shirley Purnell. Shirley told me she was the deciding official who made the selection. I asked Shirley about the selection factors. Shirley told me that her selection was based upon experience, and that the person selected interviewed very well and that she (Shirley) thought she would make the best choice. I do not know how the person selected could be better qualified than me. Shirley did not say how the person was better qualified in terms of job qualifications. During the EEO counseling, the EEO counselor did not provide me with answer for why the agency did not select me. I had FDIC experience and knowledge of background and payroll systems. The new person did not have knowledge of pay charts and period pay records—she had no knowledge of FDIC, including pay scales. FDIC has different colas—Shirley said she wanted someone who knew historical knowledge of FDIC older pay scales—the selectee did not know. I had all of that knowledge and had done the same work before. I felt I was the best candidate based upon what Shirley told me she was looking for." Shirley asked me "have you thought about leaving or looking elsewhere for work when I asked her about not being selected for the position. When I asked why, Shirley said sometimes it is a good thing to leave and go somewhere else. She told me that if I were looking she would help me find another position. The selectee was a Grade 11 who was hired at the Grade 12 level. I had held a similar position at the Grade 11 level for more than three years and was qualified for a Grade 12 position

Later, I found out at an all-hands meeting in May 2004, when Shirley announced the person that she had hired and asked her to stand up. It was at that meeting that I saw that the person selected was a young, White female. I did not know the selectee before she was introduced at meeting in May. I had questions as to why Shirley would go outside of organization and hire. Since the selectee has been at FDIC, from my understanding, she has worked little to none—never here, someone does her work. The selectee did not know how to compute pay – a grade 8 employee assisted with the training

9.    Based upon what I have been told, she (the selectee) does not know anything about how leave is handled or how to compute pay. Everyone was laughing because they told me "the lady got your job doesn't know what she is doing

10.    I also know Shirley from seeing her on a day to day basis as well as applying for past positions. I interviewed during the RIF in 2002 for a Human Resource Specialist, Grade 9 position. At the time, I was a Grade 9. I asked Shirley about applying in 2002 and she told me that it was going to be graded at the "7" level. Then the position was advertised as a 90-day detail—I did not apply because it was a temporary position and because Shirley told me, it would become a Grade 7. Later Sheva Middleton was selected for the temporary position (Sheva had been a Grade 11 and her position was going to be RIF's). After Sheva worked for 90 days, the position was advertised as a Grade 9. I applied for the position as a Grade 9 and was interviewed by Shirley, who was

the selecting official. I was not selected for this position. I talked to Shirley again and asked her about the selection factors. Shirley told me that the selectee had more experience and answered question about inclement weather better than I did (this was a hypothetical question in the interview). The selectee said she would send a memo. I asked Shirley how the selectee's answer could be better than mine when I had 25 years of service (the selectee had 12) and I also answered the hypothetical by saying that a memo should be sent but that I wanted to research the question before sending the memo. I asked Shirley how she could say that the selectee (2002 position) had more experience—did not get answer. I felt that she did not read my resume because her answer was not true. I did not file a complaint at that time.

Prior to filing my complaint against Miguel, after the RIF (2002), I thought my relationship with Shirley was okay. I knew her from working at FDIC, not on a personal level. I worked under Shirley from February 2003 to September 2003. My section had been abolished and Shirley was supposed to be monitoring me. I was doing the same work that supposedly was the cause of the RIF when I was moved to Shirley's section. When I asked Shirley if she had work for me, she would tell me to check with other people (Natalie Tyce and other members of the Human Resources Section) and tell me that I was supposed to be in Virginia. Essentially, I went on my own to find out what work I could perform in addition to continuing to perform work of my position that had been abolished for "lack of work. "Shirley was the person to sign my leave slips—she would write, "signing for Ed Chmielowski." Shirley would also give me a hassle about signing my leave slips  and tell me I was supposed to be in Virginia. I was performing the same work that I had performed before the RIF (as a Grade 9 Personnel Management Specialist, abolished in August 03). After the RIF, I accepted the position of Human Resources Assistant, Grade 8, but had not been transferred to the Virginia facility. I asked when I was supposed to be transferred to Virginia near the time I was to begin my vacation. Shirley told me to talk to Miguel. Miguel told me to go to Virginia when I returned from vacation.

11.    For the past few years, most times that I applied for a position I was found qualified and interviewed, but not selected. I have more experience than most of the people that have been selected and was told that I interviewed just as well.

In 2002, I applied for a Grade 12 detail, in the Executive Branch of Personnel and Payroll. I would have been doing some of the same work I had done as a supervisor. I was never told that I was not qualified. The announcement was cancelled and a White woman was selected who was going to another area. I believe that she was a being protected from a reduction in force, even though she had to be trained to perform the duties of the position. Later, she was placed in the Executive Unit in a CG-12/13 position. She maintained her grade as a CG-13.  The selectee had never worked with the Executive Branch of Personnel and Payroll. All of these positions were moved out of Payroll Personnel Operations. The personnel and payroll work supporting the Executive Branch had been handled by my prior supervisors, Mary Anderson and Natalie Tyce.

In 2002, I applied for the position of Human Resources Specialist, working in time and attendance issues, the BTA system. I interviewed but was not selected. The position was the same duties as all of the positions in Operations (Personnel, Payroll) where I have worked since 1990. Sheva Middleton was selected (African-American female); she is a younger female and of very light complexion. I felt that my age and prior EEO activity were factors in my not being selected for the position.

In 2003, I applied for the position of Human Resources Specialist, Benefits, Grade 9/11. I applied for the position at both levels. I was interviewed by panel members, Ed Chmielowski and Carol Martin. Ed was the selecting official, and he selected Debbie Gonsa (White female) and Sherry Smith (African-American female). Both women were hired at the Grade 12 level and both were younger than me. I had worked with Debbie prior to her selection and found out that Sherry was in her 30's. I asked Ed the reason for my nonselection. I was not provided a good reason, except that they were better qualified. I had been better qualified for other human resource positions, but never selected.

In 2004, I applied for a 90-day detail in the Division of Finance as an Administrative Specialist, Grade 11. I was interviewed (can't remember name of interviewer), told I interviewed well, and asked for my availability. I later received an e-mail informing me that a selection would not be made at this time.

In September 2004, I applied for the position of Human Resource Specialist, Compensation, Grade 11. I was interviewed and told last week (week of November 2) that Roger Little (African-American male), a Grade 7 was selected. Roger worked as part of the staff that I supervised. Roger had never done garnishment for child support or for alimony. He was hired at the Grade 9 level. I was not told why I did not get the position. Lorinda Potucek was the selecting official, although she did not interview me. I was interviewed by Jorita Campbell and another female.

12.    I am seeking as a remedy a Grade 11 position and then a Grade 12 position, within six months, attorney fees, back pay from the time the selection was made to the present, compensatory damages for illness related to stress caused by the agency actions, and punitive damages. I do not have documentation for compensatory damages, but can provide at a later date.

13.    I will let you know about additional witnesses via telephone by Monday 11/15. I have witnesses that believe I have been discriminated against, but I have not been able to contact them. One is on leave and the others have not been available, but I believe will step forward. I will not release names at this time.

REBUTTAL INTERVIEW, Conducted on November 19, 2004:

In an interview of Shirley Purnell, the selecting official, on November 15, 2004, she stated that she did not think that the years of experience in personnel were relevant since the position required only one year of experience at a lower grade level. What is your response?

**Response**: Shirley indicated to me that she was looking for a person with experience, specifically with FDIC knowledge, so why wouldn't years of experience be relevant. Why wouldn't my years of experience in FDIC be a factor, and be considered in making a selection, especially since I previously held the position from 1990 through 1996 (I held the position at the grade level, GS-11, from 1993 through 1996).

Ms. Purnell indicated that you did not have a good grasp of back pay calculations and did not understand salary structure or pay charts. What is your response?

**Response**: That is not true. I computed all of the back pay calculations for the legal department, working with Mary Anderson and Natalie Tyce. That would have included back pay calculations for EEO complaints, promotions, within-grades, child support, garnishments, incorrect pay issues, and income taxes—withholding for federal and state taxes. I completed back pay calculations manually and also using the computer. There are numerous witnesses that know that I did back pay calculations. Witnesses include Natalie Tyce, Donna Serrano, Judy Rice, all of the staff that I supervised. I was selected to go to the Compensation Unit specifically because of my back pay experience. It is very obvious that Ms. Purnell does not know what she is talking about and did not read my resume. I believe that Ms. Purnell as the chief of operations does not herself know how to compute back pay calculations.

Ms. Purnell said that she asked you about troubleshooting and that you could not identify system problems and errors, that you did not seem to understand system problems. She stated that you talked about placing a hold on an employee's garnishment, which is not a complex payroll issue, but a routine action requiring a phone call to resolve.

**Response**: I don't recall that particular question. Shirley's statement is untrue, because I have specific experience in system problems and was the "go to" person for identifying system problems in the payroll and personnel system. I was the liaison person for system problems for contacting National Finance Center to determine what payroll system problems were. I was the liaison person in payroll until Lucy McCabe was selected for the entire section in 1993. Shirley does not know anything about payroll and personnel operations, how the system works. She has never worked with me, when I was supposed to work with her; she kept telling me that I should be in Virginia. She does not know about my work. She never talked to any of my references as part of interviewing me.

Shirley did ask me whether I had considered retiring. I told her that I considered it, everybody does. Shirley also asked me if I had considered going to another agency and that she would help me.

I have read the above statement consisting of 7 pages, and it is true and complete to the best of my knowledge and belief.  I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

Signature

Date

Subscribed and sworn to before
at Washington, DC
on the _____ day of December, 2004

MY COMMISSION EXPIRES
04/01/2006

(Signature of Turna R. Lewis)
Contract EEO Investigator

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500          Office of Diversity and Economic Opportunity

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1.  To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2.  To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3.  To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4.  To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5.  To review your affidavit and make corrections or other changes <u>prior to</u> signing the affidavit.

**I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.**

WITNESS: _Delotty Chappell Graham_          DATE: _Nov. 12, 04_

## PRIVACY ACT NOTICE TO COMPLAINANT
## FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

### GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

### AUTHORITY

The authority to collect the information requested by this interview is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

### PURPOSES AND USES

The information you supply will be used along with data you supplied previously and information developed by investigation to resolve your equal employment opportunity discrimination complaint. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve your equal employment opportunity discrimination complaint. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, or to others for uses as published in the Federal Register.

### EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary. However, failure to furnish the information will result in your complaint being returned without action and being recommended for cancellation for failure to prosecute.


_Turna R Lewis_

**Signature of Interviewer**


_Dorothy Chappell Johnson_

**Signature of Complainant**


_11/12/04_

**Date**


_FDIC, 801 17th St NW_

**Place**

## Right to Remedies

You have the to right to provide documentation in support of your requested remedy. Evidence on the question of remedies may include evidence in support of make whole relief or compensatory damages.

Make Whole Relief is recoverable under Title VII of the Civil Rights Act and is defined as relief that would place you in the position in which you would have been had the discrimination never occurred. Examples of such relief may include backpay, interest on backpay or restitution of leave

Compensatory damages are available under the Civil Rights Act of 1991 and may be claimed for monetary losses, such as medical bills, psychiatric expenses, and other quantifiable out-of pocket expenses. Damages may also be claimed for non-monetary losses, such as emotional distress and mental anguish.

Compensatory damages are not recoverable for actions occurring before November 21, 1991. They also do not apply to allegations regarding the improper processing of a complaint or cases brought solely under the Age Discrimination in Employment Action. Compensatory damages do not include relief already recoverable under Title VII of the Civil Rights Act.

Should you seek compensatory damages, you must provide proof that the damages were caused by the alleged discrimination. In order to substantiate the claim, you must provide copies of any and all objective evidence indicating that you have incurred compensatory damages, as well as evidence that the damages are related to the alleged unlawful discrimination. Receipts, records, bills, canceled checks and statements from others (such as health care providers) describing how you were affected and the extent of the damages are some of the examples of evidence which may be used to support your claim.

Should you choose to submit documentation for inclusion in this report, it must be received by the investigator by

_____ 11/19/04 _____ .

1

If such documentation is not made available by this date, you
may submit the documentation to the alleged discriminatory
agency or you may present this documentation to an
Administrative Judge should you elect to go to hearing.

To certify you have read and understand this document, please
sign and date in the designated spaces below.

Ruth Chappell Johnson                    Nov. 13, 04
Complainant's Signature                  Date

2