# PLAINTIFF'S EXHIBIT 5

## AFFIDAVIT OF SHIRLEY Y. PURNELL

DISTRICT OF COLUMBIA

I, Shirley Y. Purnell, Assistant Director, Human Resources Service Center, CM-0201-II, Division of Administration, Human Resources Branch, Federal Deposit Insurance Corporation (FDIC), make the following statement freely and voluntarily to Turna R. Lewis, who has identified herself to me as an EEO Contract Investigator for the FDIC, investigating a complaint of discrimination filed by Dorothy Chappell-Johnson, knowing that this statement is not confidential and may be shown to an interested party. I hereby solemnly swear or affirm:

1. I have been in my current position since January 11, 2004. My immediate supervisor is Miguel A. Torrado, Associate Director, Human Resources Branch; and my second level supervisor is Arleas Upton Kea, Director, Division of Administration.

2. I had the same supervisors when Patricia Quattrone was selected for the position of Human Resources Specialist. I was in a different position, Human Resources Officer, CM-201-I, FDIC, Division of Administration, Human Resources Branch, Human Resources Service Center, Operations.

3. My race is African American, I am 53 years old (DOB: 12/25/50). My prior EEO activity includes serving as a witness for the government in EEO complaints, serving as the agency representative in alternative dispute resolution, completing affidavits, supervising human resources specialists responsible for providing copies of official documents for EEO complaints, and I filed an EEO complaint in a different agency.

4. I was the selecting official for the position advertised under vacancy announcement number 2003-HQ-2419. It was my decision to select Patricia Quattrone for the position. Her race is White; I am not sure of her age.

5. I used a structured interview panel—Natalie Tyce, former incumbent of the position and Eugene Bell, Team leader in the Program Administration Unit, which is now under my supervision, but was not officially at that time), and is part of the HR Service Center. I had authority to make the selection, but the final approval rested with Miguel A. Torrado, the Associate Director, Human Resources Branch. The interview panel came to consensus on the top two candidates. In selecting the interview panel members, I wanted someone who had actually done the job (Natalie Tyce) and another objective, impartial reviewer, who did not know the candidates. Ms. Tyce and I had worked together and knew some of the candidates. Mr. Bell was a fairly new employee at the time, but had previous experience in human resources operational capacity, which certainly made him someone qualified to make an assessment of candidates. Because he had been a supervisor in the past over similar functions, I thought he understood the job requirements.

Page 1 of 5                            Initials 

6. FDIC is policy regarding interviewing practices for Merit Promotion requires that we interview all internal candidates up to nine; four of the candidates were internal. Six candidates were originally referred to me, two declined consideration before interview. I created structured interview questions, which were reviewed by the Compliance Officer, Lorinda Potucek. All of the questions were accepted. All candidates were asked the same questions. I asked Ms. Tyce and Mr. Bell to serve on the interview panel with me. Ratings were based on responses to the questions. We [the interview panel] reviewed the application packages and we discussed the interview questions and benchmarks so the panel members would understand what I felt was the most important knowledge and experience for the position. I needed someone who had information systems experience, had responsibility for making corrections, recommending changes to the information system; had experience doing back pay calculations, pay adjustments, and payroll system interfaces. The National Finance Center (NFC) is our payroll office. I wanted someone who had experience with the NFC, experience reviewing personnel actions for accuracy, and had a clear understanding of the whole payroll function.

7. We [the interview panel] did not do reference checks on all candidates. I conducted reference checks on the top two candidates based on our consensus—Patricia Quattrone, the selectee, and Coleista Salatich. Reference checks were with current and past supervisors. We discussed the candidates' background and experience relative to the KSAs. The selectee needed to know federal government laws, regulations and policies even though we have our own pay system. Our merit promotion policy does not require that candidates be rated when 9 or fewer qualified applicants apply for a position. Based on the benchmarks to the structured interview questions and our judgment of how well each candidate addressed the questions and the content of their application package is how we decided on the top two candidates.

8. I based the selection on who answered the questions/met the KSAs. If I got positive responses, based on a comparison to the benchmarks, I believed the candidate could do the job. For example, KSA #1-someone who worked in private sector could probably not do the job in a 90 day period after selection. I needed someone who had an understanding of and exposure to the federal government hourly pay structure/payroll processes and understood personnel action processing. The three most important KSAs were numbers 1, 2, and 3 for the structured interview process. All of the KSAs were weighted equally, they were equally important. KSAs 4 and 5, were better evaluated through reference checks.

9. The Selectee had previously worked with the Department of Commerce. I was impressed with her experience working with lots of pay differential issues. For example, an employee may be receiving several pay differentials at the same time. There is a constant need for doing back pay and pay differential calculation. Patricia had responsibility for many of these different types of calculations on a regular basis. I did not think that years of experience were relevant since only one year at the next lower grade was required. The position was a Grade 11/12 and could be filled at either Grade 11 or 12.

10. In structured interview question #1, regarding back pay calculations, Ms. Chappell-Johnson's response did not reflect that she had a clear understanding about back pay calculations, because she indicated that that there was a back pay calculating system—no such system exist. Dorothy response did reflect that she gathered information, did manual pay calculations, and would have had experience dealing with the NFC.

11. Regarding structured interview question #2, "Can you describe your experience in troubleshooting systems errors, identifying the types of errors you detected, and what you did to ensure that the systems issues were addressed." I wanted to know if the candidates had knowledge and understanding of the NFC payroll/personnel system, how they addressed systems errors they detected, and who they contacted. Ms. Chappell-Johnson's response did not address system errors. She discussed manual input errors (coding errors). I was looking for the candidate's response to address detecting systems errors and making recommendations to higher management for the correction of systems error. Ms. Quattrone [Selectee] talked about taking actions to correct something in the system when the system did not recognize the code, when everything showed that the system had correct information.

12. In structured interview question #4, when asked to describe recent customer complaints that involved resolving complex pay or payroll issues where candidate was required to work with NFC in resolving the issues. Ms. Chappell-Johnson described a case related to setting up an employee garnishment which is a fairly routine process. There was no detail to suggest what was complex with the garnishment. She mentioned calculating Fair Labor Standards Act calculations for separated employees, but provided no details as to why these calculations were complex.

13. Reference checks were done for the top two candidates. Dorothy would have ranked third of the candidates interviewed.

14. Ms. Chappell-Johnson worked in Operations Payroll with Natalie [Tyce]. Natalie said that Dorothy's experience had more to do with time and attendance. I am not sure that she performed the full gamut of duties and responsibilities described in the vacancy announcement.

15. As a Human Resources Officer for over four years, I had responsibility for ensuring that documents requested by EEO Counselors or Investigators related to EEO matters were provided timely. I was involved in the 2003 reduction in force (RIF) as the manager responsible for ensuring the RIF was conducted in accordance with regulations and agency policy. I was responsible for providing employee briefings and counseling. In 2003, Ms. Chappell-Johnson was reassigned from the Compensation and Benefits staff to the Program Administration Unit, which placed her under my supervision for a short period (approximately 4 months). When the 2003 RIF occurred, Ms. Chappell-Johnson's

RIF assignment placed her in the HR Benefits Section. While assigned to me, Ms. Chappell-Johnson was responsible for handling requests for waivers of overpayment, computing FLSA claims, and handling the agency payment for unemployment compensation. I am not now Ms. Chappell-Johnson's immediate supervisor.

16. I never said that Ms. Chappell-Johnson or anyone should retire or take a buyout and I never heard anyone say anything like that to her.

17. Regarding Ms. Chappell-Johnson's race discrimination complaint, I looked for the best qualified candidate and considered diversity as well. My decision to select Ms. Quattrone was based on my judgment that she was the best qualified candidate for the position. Other selections I have made included:

Lorinda Potucek, White Female, Human Resources Officer, CM-I
Priscilla Payne, African-American, Human Resources Specialist, Grade 9
Eugene Bell, African-American, Human Resources Specialist, Grade 14
David Richardson, White Male, Supervisory Human Resources Specialist, Grade 13
Janet Vorce, White female, Supervisory Human Resources Supervisor, Grade 13
Ingra Jones, African-American female, Human Resources Specialist, Grade 12
Eileen Gomsi, White female, Human Resources Specialist, Grade 12
Sheva Middleton, African-American female, Human Resources, Grade 9
Rita Bial-Boxley, White Female, Human Resources Specialist, Grade 12

18. At the time I made the decision to select Ms. Quattrone, I was not aware of Ms. Chappell-Johnson's age. I am aware of her prior EEO activity because I provided information in response to resolution efforts and work with our lawyers.

19. Regarding the EEO counseling, I do not remember talking to anyone. I do not remember being contacted during the EEO counseling phase of Ms. Chappell-Johnson's EEO complaint.

20. Ms. Chappell-Johnson made an appointment with me after the selection was made to get feedback on why she was not selected. I sat down with her and provided her basic information about the difference between her answers and those of the top two candidates. It was a comfortable conversation and I heard nothing else about the selection.

I have read the above statement consisting of 5 pages, and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

_____
Signature

12-15-04
Date

Subscribed and sworn to before
at Washington, DC
on the ___15th___ day of December 2004

_____
(Signature of Witness)

Teresa L. Belew
Notary Public, District of Columbia
My Commission Expires 11-30-2008

**PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
(OTHER THAN COMPLAINANT)
FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW**

GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, or to others for uses as published in the Federal Register.

EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_____  
Signature of Interviewer

_____  
Signature of Affiant

11/15/04  
Date

1730 Pa. Ave, Wash. DC  
Place

**FDIC**
**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500

Office of Diversity and Economic Opportunity

## NOTICE OF RIGHTS OF WITNESSES
## IN
## EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1. To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2. To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3. To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4. To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5. To review your affidavit and make corrections or other changes prior to signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: X _[signature]_   DATE: 11-15-04