# PLAINTIFF'S EXHIBIT 14

## AFFIDAVIT OF NATALIE TYCE

DISTRICT OF COLUMBIA

I, Natalie ~~Renee~~ Renie Tyce, Human Resources Specialist, GS-13, Human Resources Information Management and Payroll Section, Division of Administration, Human Resources Branch, Federal Deposit Insurance Corporation (FDIC), make the following statement freely and voluntarily to Turna R. Lewis, who has identified herself to me as an EEO Contract Investigator for the FDIC, investigating a complaint of discrimination filed by Dorothy Chappell-Johnson, knowing that this statement is not confidential and may be shown to an interested party. I hereby solemnly swear or affirm:

1. I have been in my current position for one year and employed by FDIC for the past 22 years. My first level supervisor is Lucy McCabe, Acting Assistant Director (until the week of November 22, 2004). My second level supervisor is Miguel Torrado, Associate Director, Human Resources Branch.

2. As of the date of the selection at issue (April 2004), my supervisor was Gregory Talley, Assistant Director, Human Resources, Human Resources Information Management and Payroll Section.

3. My race is African-American, I am 40 years old (DOB: August 31, 1964), and I have never filed an EEO complaint, although I was part of the class action filed by African-Americans at FDIC.

4. My involvement in the selection at issue consisted of sitting in on the interviews. Shirley Purnell asked me to sit in on the interviews. There were six applicants that were found to be qualified: four were interviewed, and two others dropped out before interviews were conducted. Eugene Bell, who had just started at FDIC a few months ago served as an interviewer. ~~Eugene and~~ I was not involved in making the selection. Shirley was the selecting official. FDIC is currently under a consent decree that requires that two or three employee interview applicants and a structured interview format.

The structured interview format required that each applicant be asked the same questions. There were six questions and we each asked two questions. Any notes that we took as panel members were given to Shirley. I did not retain any interview notes; everything was given to Shirley.

5. I had no other involvement in the interview and selection process. I had no role in checking references; I only sat in on interviews. I was not involved in discussing candidates, or rating any of the candidates.

6. I do not know what factors Shirley used in assessing the candidates. Shirley decided the factors and I do not know what factors she used. I thought Dorothy interviewed very well. She used to work for me, so without a doubt she would have been able to do the job. In terms of rating the people that we interviewed, one of the applicants

could not answer the questions. Another person I thought did very well, was very articulate, knew the rules and regulations, and answered the questions with detailed information. I would have rated Dorothy (the Complainant) as being the second most qualified. I did not view the Selectee as being among the top candidates; I did not consider her one of the top two candidates. The person that Shirley selected I thought looked very well on paper, but was unable to answer the questions in detail and did not display in-depth knowledge. The Selectee did not give the impression that she could come in and hit the ground running.

7. In terms of answering the questions, Dorothy communicated her background, knowledge of history of FDIC and knowledge of procedures for calculating pay rates, back pay, pay schedules. I believe that she came across as better qualified than the Selectee, without a doubt.

8. Shirley may have had knowledge of Dorothy's prior EEO activity. I did not know that she was a member of the class action filed by African Americans at FDIC. I know that she (Dorothy) applied for several jobs and was not selected. ~~I do think that she was the best qualified candidate in the previous positions for which applied.~~ NRT

9. It is hard to say whether age or race were factors in her Dorothy's nonselection. I do not know what factors Shirley used, besides the fact that the Selectee looked good on paper. I say that because before we got started with the interviews, I had not seen any of the applications. Shirley pulled out the Selectee's application and said: "I like this person, ~~this is who I want.~~" The Selectee did say that she was nervous in interviews and did not ~~do very~~ have much well. I did not ~~feel~~ comfortable that she (the Selectee) really knew the NRT job. interview

10. I was not contacted by the EEO Counselor, so I did not participate in the EEO Counseling process. To my knowledge, affirmative employment was not a consideration in Complainant's nonselection.

11. I know that ~~Shirley~~ Dorothy applied for other Human Resources Specialist position and NRT that she was qualified for these positions, but not selected. I believe that Dorothy applied for two Human Resources Specialists positions, Grade 12 and that Shirley selected an African-American under age 40, and a White woman over the age of 40. Both of the SUPV. PAYROLL/PERSONNEL candidates selected were external candidates. Dorothy had been a ~~Human Resources~~ NRT Specialist, Grade 11 and had supervised a staff of up to twelve employees. There was another Human Resource Specialist position that came up when we were going through a reassigned to reduction in force (RIF) in either 2002 or 2003. A White woman was ~~selected for~~ that NRT position. She had applied for the other two Human Resource Specialist positions, Grade 12, but did not meet the qualifications. ~~To keep her in FDIC, since she was subject to the NRT RIF, basically a Grade 12, Human Resource Specialist position was created for her.~~ She is over age 40. Most of the persons hired by Shirley, in these Human Resources Specialist positions, have left FDIC, some serving about six months. NRT

12. I was not aware of Dorothy's 1998 EEO complaint.

13. The Selectee started on April 4, 2004. She has been out on medical leave since that time, and not worked a full workweek since beginning her employment. Other people are doing her job. In the last 90 days, has only worked 5 days. ~~I think it was a bad decision.~~ she was ~~not checked out~~ fully checked out. NRT It doesn't appear

I have read the above statement consisting of 5 ages, and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties. NRT

*Natalie Tyce*
Signature

11/18/04
Date

Subscribed and sworn to before
at Washington, DC
on the 18 day of November, 2004

Teresa L. Belew
Notary Public, District of Columbia
My Commission Expires 11-30-2008

# PRIVACY ACT NOTICE TO EEO COMPLAINT INTERVIEW WITNESSES
# (OTHER THAN COMPLAINANT)
# FOR DISCRIMINATION COMPLAINT INVESTIGATION INTERVIEW

## GENERAL

This information is provided pursuant to Public Law 93-579 (Privacy Act of 1974), December 31, 1974, for individuals supplying information for inclusion in a system of records.

## AUTHORITY

The authority to collect the information requested by affidavit, statement or other type of testimony is derived from one or more of the following:

Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 29, Code of Federal Regulations, Section 1613/1614; Title 5, United States Code, Sections 1303 and 1304; Title 42, United States Code, Section 2000e-16; and Executive Order 11478, as amended.

## PURPOSES AND USES

The information you supply will be used along with data developed to resolve or otherwise determine the merits of the equal employment opportunity (EEO) complaint of discrimination and/or reprisal. This information may be furnished to designated officers and employees of agencies and departments of the Federal Government in order to resolve or otherwise determine the merits of the EEO complaint of discrimination and/or reprisal. The information may also be disclosed to any agency of the Federal Government having a working relationship with regard to Equal Employment Opportunity Commission activities, or to others for uses as published in the Federal Register.

## EFFECTS OF NON-DISCLOSURE

Disclosure of the information sought is voluntary; however, failure to furnish the information will result in a direction by the head of the agency, or his/her designated representative, to produce or provide such information as is available. Failure to provide the information at that time may result in the initiation of disciplinary proceedings against you up to and including removal. Applicants in such cases may be refused employment.

Disclosure of information by present or prospective Government contractors is also voluntary, although failure to furnish the above requested information where the contract so provides may result in administrative sanctions, including disqualification to enter into a contract or termination of an existing contract.

_Turma Reeves_
Signature of Interviewer

_Natalie Tyce_
Signature of Affiant

11/15/04
Date

1730 Pennsylvania Ave NW WDC 20429
Place

**FDIC**

**Federal Deposit Insurance Corporation**
3501 N. Fairfax Drive (Room 801-1231), Arlington, VA 22226-3500                    Office of Diversity and Economic Opportunity

NOTICE OF RIGHTS OF WITNESSES
IN
EEO INVESTIGATIONS

Pursuant to the provisions at 29 C.F.R. §1614.108, federal agencies are required to investigate all aspects of discrimination complaints. The investigation shall include a thorough review of the circumstances under which the alleged discrimination occurred, and the treatment of members of the complainant's protected group(s) as compared with the treatment of other employees in the organizational segment in which the complaint arose.

All employees having any knowledge of the matter complained of are required to cooperate with the investigator who is conducting the investigation. The investigator is authorized to administer oaths and require that statements of witnesses be reduced to an affidavit. The witness must swear to or affirm to the truth of the statements before the investigator or a third party, without a pledge of confidentiality. The investigator is also authorized to obtain copies of relevant employment records, policy statements, and regulations.

As a witness, you have the following rights:

1. To be provided a Notice of Authorization that identifies the investigator and explains the investigator's authority and responsibility in the conducting the investigation.

2. To have a representative present at any meeting/discussion with the investigator. The representative can advise you on how to respond to the investigator, but cannot respond for you.

3. To receive sufficient information concerning the claim(s) and basis(es) of the complaint and circumstances under which the complaint arose in order for you to accurately respond to the questions posed by the investigator.

4. To be provided access to documents you previously prepared or had access to, if they are necessary for you to review in order to respond to questions posed by the investigator.

5. To review your affidavit and make corrections or other changes _prior to_ signing the affidavit.

I HAVE READ AND UNDERSTAND MY RIGHTS AS A WITNESS IN EEO INVESTIGATIONS.

WITNESS: _Natalie Tyce_          DATE: _11/15/04_