UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| DOROTHY CHAPPELL-JOHNSON<br><br>Plaintiff,<br><br>v.<br><br>MARTIN GRUENBERG<br>Acting Chairman<br>Federal Deposit Insurance Corporation<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action NO. 1:06-CV-00314-RCL<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant seeks Summary Judgment herein because the undisputed facts of this case do not support Plaintiff's claims of discrimination or reprisal.

Plaintiff's response to Defendant's Motion for Summary Judgment and Brief in Support raises no material issues of fact sufficient to create the need for a trial of this case.  The material submitted with Plaintiff's Opposition brief does not rise to the level of evidence which raises a triable material fact, and those submissions should be disregarded.

An oft-quoted legal standard for the purposes of summary disposition of a case is that "[a] party opposing a motion for summary judgment must point to more than just 'a scintilla of evidence' to support [her] position," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Specifically, "there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 249-50.  Evidence that is 'merely colorable" or "not significantly probative" will not defeat a motion for summary judgment. Id**.**  It is this latter type of evidence – for example, supposition, and contradictory assertions – upon which Plaintiff relies in bringing her brief in opposition.

Plaintiff's brief in opposition fails to raise a genuine issue in dispute such that a jury might rule to the contrary. Therefore, Defendant's motion for summary judgment should be granted and Plaintiff's suit dismissed with prejudice. See e.g. Stewart v. Ashcroft, 352 F.3d 422, 428 (D.C. Cir. 2003)(District of Columbia Circuit affirmed District Court's decision granting summary judgment to defendant in Title VII case where plaintiff/appellant failed to offer sufficient evidence such that a jury could find that the agency's reason for its actions was a pretext for discrimination.)

The purported issues raised by Plaintiff and facts allegedly in support thereof, are either unsupported by the proffered evidence, untrue, or not material to the issues at law.

## PLAINTIFF'S "GENUINE ISSUES OF FACT"

Accompanying Plaintiff's Opposition brief is a "Statement of Genuine Issues", setting forth the five "Genuine Facts" in this matter, according to Plaintiff. The "issues" and the purported evidence in support thereof are intertwined with each other and also serve as the "basis" for Plaintiff's denial of certain "Material Facts" set forth in Defendant's moving papers herein.

The "Genuine Issues of Fact" in this case, according to Plaintiff, are:

1. **Whether Dorothy Chappell-Johnson was the best qualified candidate for the Human Resource Specialist position;** (Statement of Genuine Issues, at page 2;)

**Defendant's Response**:

In support of the contention that Plaintiff was the best-qualified candidate for the subject position, she states that the duties therefor were the same as those performed by Plaintiff earlier in her career.

It is noted in Plaintiff's argument in favor of this point that she had performed the allegedly "same" duties "from 1990-1996" (Statement of Genuine Issues at page 2), however, the subject interviews took place in February of 2004.

Plaintiff's argument that she was the best-qualified candidate is based primarily on the content of her application/resume and virtually ignores the interview process. Plaintiff cites the Deposition of Shirley Purnell (Plaintiff's Exhibit 6) as supporting the contention that Plaintiff had previously performed the subject job duties. When questioned as to why she did not believe that Plaintiff had performed all of the duties claimed in her resume, Ms. Purnell stated:

> "Because of what I call her inability to articulate what she did when she was asked in the interview, specific questions, as it related to some of these items."
> Plaintiff's Exhibit 6 at page 243, lines 9-14.

Specific examples of Plaintiff's failure to "back-up" some of the claims in her application are contained in Shirley Purnell's Affidavit, Exhibit "A" to the Declaration of Shirley Purnell, appended to Defendant's Motion for Summary Judgment, where Ms. Purnell states:

"10.   In structured interview question #1, regarding back pay calculations, Ms. Chappell-Johnson's response did not reflect that she had a clear understanding about back pay calculations, because she indicated that that there was a back pay calculating system—no such system exist. Dorothy's response did reflect that she gathered information, did manual pay calculations, and would have had experience dealing with the NFC.

11.   Regarding structured interview question #2, "Can you describe your experience in troubleshooting systems errors, identifying the types of errors you detected, and what you did to ensure that the systems issues were addressed?" I wanted to know if the candidates had knowledge and understanding of the NFC payroll/personnel system, how they addressed systems errors they detected, and who they contacted. Ms. Chappell-Johnson's response did not address systems errors. She discussed manual input errors (coding errors). I was looking for the candidate's response to address detecting systems errors and making recommendations to higher management for the correction of system error. Ms. Quattrone [Selectee] talked about taking actions to correct something in the system when the system did not recognize the code, when everything showed that the system had correct information.

12.   In structured interview question #4, when asked to describe recent customer complaints that involved resolving complex pay or payroll issues where candidate was required to work with NFC in resolving the issues. Ms. Chappell-Johnson described a case related to setting up an

3

employee garnishment which is a fairly routine process.  There was no detail to suggest what was complex with the garnishment.  She mentioned calculating Fair Labor Standards Act calculations for separated employees, but provided no details as to why these calculations were complex."

These averments by the "Selecting Official," Shirley Purnell, are part of the record in this action and are uncontroverted by Plaintiff.

Plaintiff further contends that [she] "was uniquely qualified to serve in the CG-11, Human Resources Specialist position," citing the Deposition of Shirley Purnell. (Statement of Genuine Issues at 2-3). Nowhere in Ms. Purnell's deposition transcript does she make such a statement or anything close to it.  This contention of Plaintiff is both conclusory and self-serving and should be wholly disregarded.

Additionally, Plaintiff's reliance on interview panel member Natalie Tyce is misplaced as reflected in Ms. Tyce's deposition testimony.  In response to questioning by Plaintiff's counsel, Ms. Tyce testified:

> "Q. In looking at Ms. Chappell-Johnson's resume or application, you were pretty familiar with what she had accomplished as an FDIC employee?
>
> A. Yes
>
> Q. Was there anything that surprised you when you read her resume?
>
> A. No
>
> Q. Did you develop an opinion about what her resume represented at this point?
>
> A. No.
>
> Q. Did you consider that she was well qualified for the job?
>
> A. No.
>
> Q. Did you consider that she was more than just qualified for the job?
>
> A. No.

4

> Q. Did you consider she was qualified for the job?
>
> A. Yes"

Deposition of Natalie Tyce at Page 94, lines 5-22 and Page 95, line 1. Exhibit "A" hereto.

As stated in Defendant's Motion for Summary Judgment herein, <u>none</u> of the three interview panel member believed that Plaintiff was the "best qualified" candidate for the subject position. At the risk of stating the obvious, the three interview panel members were the only individuals to meet with all four candidates and, therefore, are the only individuals qualified to <u>fully</u> compare the candidates.

**2. Whether the selectee - a younger white female – was less qualified than Chappell-Johnson.**

**<u>Defendant's Response</u>:**

Plaintiff's basic premise for her contention that the selectee was less-qualified than her is that Ms. Quattrone "had no experience with the FDIC personnel and pay system nor with any of the FDIC payroll/personnel automation systems, most notably CHRIS; nor had she ever served as a Payroll/Personnel Systems Specialist." (Statement of Genuine Issues at page 3).

Plaintiff's contention on that Ms. Quattrone had never served as a Payroll/Personnel Systems Specialist is not supported by her own evidence (Plaintiff's Exhibit 10). Ms. Quattrone's application states that she had been working as a "Payroll Systems Specialist" with the Department of Commerce since November, 1999. <u>See</u>, Plaintiff's Exhibit 10 at Document 20-12. Further, none of the KSAs in the subject job announcement, Plaintiff's Exhibit 8, mention or refer to FDIC-specific experience as a factor.

Plaintiff equally mischaracterizes Ms. Quattrone's response to KSA #3 and makes the conclusory statement that Ms. Quattrone's experience, on paper, is/was not comparable to hers.

5

As previously stated, Plaintiff's analysis is devoid of any reference to the interview process and how it may have played a role in the selection process.

> **3. Whether a jury could find that Purnell was motivated by discrimination when she treated Chappell-Johnson less favorably than she treated the selectee – a younger white female.**

**Defendant's Response:**

In support of this contention, Plaintiff alleges that Shirley Purnell was "dismissive" of Plaintiff's claimed accomplishments and experience. (Statement of Genuine Issues at page 4.)

As "evidence" of this contention, Plaintiff "quotes" Ms. Purnell and attempts to equate skepticism with intentional discrimination. One quote cited by Plaintiff is that ". . . Ms. Purnell stated that she was "not sure that [Plaintiff] performed the full gamut of duties and responsibilities described in the vacancy announcement." (Statement of Genuine Facts at page 5, citing Plaintiff's Exhibit 5).

In order to understand that Ms. Purnell was not simply being "dismissive," the entire quote must be considered:

> "14.   Ms. Chappell-Johnson worked in Operations Payroll with Natalie [Tyce]. Natalie said that Dorothy's experience had more to do with time and attendance. I am not sure that she performed the full gamut of duties and responsibilities described in the vacancy announcement." Id.

Plaintiff goes on to make the unsupported allegation that, ". . . Purnell fully accepted, without reservation, the contents of Ms. Quattrone's application." (Statement of Genuine Issues at page 4). Plaintiff cites no evidence for this proposition and, again, ignores the interview process as a means of verifying information.

Plaintiff's next contention is that she was not "fully" considered "for the subject position since Ms. Purnell did not conduct a reference check on her but did conduct one on the selectee. (Statement of Genuine Facts at page 5). While it is true that Ms. Purnell conducted reference

6

checks on two candidates, Ms. Quattrone and Ms. Salatich, Plaintiff and candidate Suzanne Moy did not have theirs checked. As explained in Defendant's Motion for Summary Judgment herein, Ms. Purnell and Eugene Bell named Ms. Quattrone as their top candidate. Natalie Tyce named Ms. Salatich as her top candidate, resulting in the allegedly discriminatory reference checks. See, Declaration of Shirley Purnell at paragraph 5.

Finally, Plaintiff contends that she was not considered against KSA's 4 and 5 for the subject position, since reference checks were not conducted on her. (Statement of Genuine Issues at page5). While Ms. Purnell stated in her affidavit to the EEO investigator that "KSA's four and five were better evaluated through reference checks," she stated the following in her deposition testimony:

> Q.   You didn't consider KSAs four and five for Ms. Chappell-Johnson, did you?
>
> A.   Let me look at the KSAs. I'm not quite sure –
>
> Q.   You are saying right here, your statement is –
>
> A.   You asked the question did I consider her for KSAs four and five. I don't know what KSAs four and five are without looking at them. <u>Where the statement says they were better evaluated through a reference check, it didn't say that you couldn't answer</u> -- <u>ask questions in the structured interview process for them.</u>

See, Deposition of Shirley Purnell at page 300, lines 2-14. (emphasis added), Exhibit "B" hereto.

The citation to Purnell's deposition that, ". . . none of the structured interview questions addressed KSA's 4 or 5," is misleading since Purnell's response was "No, not specifically." See, Exhibit "B" herein at line 20. Once again, the interview process is discounted by Plaintiff.

7

**4.  Whether the interview panel process was conducted fairly.**

**Defendant's Response:**

Plaintiff's first contention regarding the fairness of the interview process is that.  Ms. Purnell announced, prior to any interviews, "I like this person, this is who I want." referring to Ms. Quattrone's application.

As "evidence" of this contention, Plaintiff cites the Affidavit of Natalie Tyce, at ¶9, Plaintiff's Exhibit 14.  In Ms. Tyce's affidavit, that portion of the alleged statement by Ms. Purnell, to wit, "this is who I want," is lined out by Ms. Tyce.  In addition, Plaintiff correctly states that Ms. Purnell and Mr. Bell have no recollection of either comment being made. (Statement of Genuine Issues at pages 5 and 6).

Plaintiff's next contention is that the interview process was unfair because, according to Ms. Tyce, the panel members did not discuss the candidates among themselves at any time. Again, Plaintiff correctly states that Ms. Purnell and Mr. Bell recall conversations concerning the candidates and the panel's recommendations.

Even if Plaintiff's contentions are true, which Defendant does not admit, Plaintiff fails to explain any basis for the contention that the alleged lack of discussion renders the entire process "unfair."

The document attached to the Declaration of Shirley Purnell as Exhibit "B," "FDIC Structured Interviews – Guidance for Interviewers and Selecting Officials," does not require discussion of the candidates by panel members.  Instead, the document states:

> "Members of an interview panel are free to openly discuss their assessment together . . ." Id. at page 3.

Plaintiff's position on this issue seems to be that the alleged failure of the panel members to discuss the candidates is prima facie evidence of an unfair process. The record is clear that Ms. Purnell and Mr. Bell recall discussions among the panel members. Further, Ms. Tyce somehow managed to convey her choice of Ms. Salatich to Ms. Purnell, with or without discussion.

Finally, assuming arguendo, that there were no discussions as alleged by Plaintiff, according to the "Guidance" document, supra, discussion were permitted but not required and therefore, this is not a material issue.

**5. Whether Purnell's failure to select Chappell-Johnson was motivated by reprisal for Chappell-Johnson's earlier and ongoing EEO activity.**

**Defendant's Response**

The sole factual basis for Plaintiff's claim of reprisal against Shirley Purnell is the fact that Ms. Purnell performed calculations for a settlement offer to Plaintiff in a prior EEO matter. (Statement of Genuine Issues, pages 6-7).

Plaintiff also alleges that her Official Personnel File (OPF) was "signed out" to Ms. Purnell in "February or March, 2004", presumably in connection with the calculations described above.

Ms. Purnell has never denied that she was aware of Plaintiff's prior EEO activity or that she performed the pay calculations described above, in connection with a potential settlement of a prior EEO complaint by Plaintiff.

Notably, there is no allegation, evidence or inference that Ms. Purnell was involved with Plaintiff's prior EEO activity other than performing the ministerial act of performing

9

calculations. Ironically, Ms. Purnell performed the subject calculations to protect the confidentiality of Plaintiff's prior EEO matter.

Defendant submits that Plaintiff's "evidence" of reprisal is wholly inadequate and certainly raises no triable issue of fact or a reasonable inference thereof.

### Plaintiff's Specific Responses to "Defendant's Statement of Material Facts as to Which There is No Genuine Issue."

Section III, of Plaintiff's "Statement of Genuine Issues" responds to certain "Material Facts" put forth by Defendant in his Motion For Summary Judgment. (Statement of Genuine Issues, pages 7-19).

Plaintiff specifically addresses Defendant's Material Facts Nos. 8, 11, 12, 17, 19, 21, 32, 33, 36, 37, 38, however, the evidentiary references Plaintiff utilizes herein are essentially the same as those referenced in the five "genuine issues" above. For this reason, Defendant responds to Plaintiff's analysis of the enumerated "Material Facts" of Defendant by incorporating by reference his responses to Plaintiff's five "Genuine Issues of Fact", and each of them, supra.

### ARGUMENT

In addition to the entirety of Defendant's Motion for Summary Judgment herein, Defendant submits that Plaintiff's Opposition thereto is without merit and does not support her claims that Defendant's articulated reasons for her non-selection are a pretext for discrimination.

In order for Plaintiff's claims to survive summary judgment, Plaintiff must show that the Defendant's articulated reasons for her non-selection were false and a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993); Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996).

The primary issue before the Court at this stage of the pleadings is whether Plaintiff has successfully or sufficiently put forth <u>evidence</u> demonstrating that the reasons articulated by Defendant for her non-selection are pretextual.

As cited in Defendants moving papers herein, the ultimate burden of persuading the Court that the defendant/employer intentionally discriminated or retaliated remains at all times with the plaintiff/employee. <u>Hicks</u>, 509 U.S. at 507; <u>Aka</u>; 156 F.3d at 1288. Thus, even if the plaintiff established a <u>prima facie</u> case, summary judgment is still available to the defendant if it sufficiently articulates a nondiscriminatory/non-retaliatory reason for the challenged action, and the plaintiff fails to present objective evidence that undermines the defendant's proffered explanation for its action and/or provides independent evidence of discriminatory/retaliatory statements or attitudes on the part of the employer. <u>See</u> <u>Aka v. Washington Hospital Ctr.</u>, 156 F.3d 1284 at 1289 (D.C. Cir. 1998). And while "plaintiff's discrediting of an employer's stated reason for its employment decision is entitled to considerable weight," a plaintiff who creates a genuine issue of material fact with respect to the employer's proffered reason will not always be deemed to have presented enough evidence to survive summary judgment. <u>Id.</u> at 1290. As the D.C. Circuit has stated:

> There may be no legitimate jury question as to discrimination in a case in which a plaintiff has created only a weak issue of material fact as to whether the employer's explanation is untrue, and there is abundant independent evidence in the record that no discrimination has occurred.

<u>Id</u>. at 1291.

Finally, a plaintiff cannot create a factual issue of pretext based merely on personal speculation of discriminatory or retaliatory intent. <u>Greene v. Dalton</u>, 164 F.3d 671, 675 (D.C. Cir. 1999) ("a mere unsubstantiated allegation . . . creates no genuine issue of material fact and will not withstand summary judgment") (quoting <u>Harding v. Gray</u>, 9 F.3d 150, 154 (D.C. Cir.

11

1993)); see also Settle v. Baltimore County, 34 F. Supp. 2d 969, 1999 WL 30892, *3 (D. Md. 1999) (citing Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1997) ("recent cases of the Supreme Court have made increasingly clear, however, the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial") (citations omitted)); Phillips v. Holladay Property Services, Inc. 937 F. Supp. 32, 35 n.2 (D.D.C. 1996) aff'd, 1997 WL 411695 (D.C. Cir. 1997) ("[A] plaintiff's denial of defendant's articulated reason without producing substantiation for the denial is insufficient to withstand a motion for summary judgment.").

In order to establish pretext, Plaintiff must go beyond showing that the employer's explanation is false but that discrimination was the real reason for her non-selection. A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary' Honor Center, 509 U.S. at 515 (emphasis in original). "It is not enough, in other words, to disbelieve the employer, the fact finder must believe the plaintiff's explanation of intentional discrimination." Id. at 519.

Plaintiff bears the ultimate burden of persuasion on the issue of whether she was intentionally discriminated against. Burdine, 450 U.S. at 253.

Even the Court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. District Columbia Dept. of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1977)) ("It is axiomatic that under the statutory scheme of Title VII … an employer may make an employment decision for a good reason, a bad reason, or no reason at all so long as racial or other discriminatory distinctions do not influence the decision."), aff'd, 595 F.2d 888 (D.C. Cir. 1979). "Once the employer has articulated a nondiscriminatory reason for its actions … the issue

is not the correctness or desirability of [the] reasons offered … [but] whether the employer honestly believes in the reason it offers." Fischbach, 86 F.3d at 1183 (internal quotation marks and citations omitted). "It is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is a phony reason." Pignato v. American Trans Air, 14 F.3d 342, 349 (7th Cir. 1994), quoted in Fischbach, 86 F.3d at 1183.

Further, "[t]o avoid summary judgment, the plaintiff [is] required to produce some objective evidence showing defendant's proffered reasons are mere pretext." Batson v. Powell, 912 F. Supp. 565, 578 (D.D.C. 1996) (emphasis added). Plaintiff cannot do so on this record.

Regarding Defendant's Statement of Material Facts, Plaintiff does not dispute the majority thereof, including certain key facts. For example, Defendant's Fact No. 23, that the six "structured interview" questions were reviewed and approved by Defendants "Compliance Officer" and No. 31, that all interviewees were asked the same "structured interview" questions, are not in dispute.

Although Plaintiff disputes Fact No. 33, that Ms. Purnell and Eugene Bell identified Ms. Quattrone as their "top" candidate, no evidence is addressed to support such a dispute. Further, Plaintiff does not dispute Fact No. 34, that Natalie Tyce identified Coleista Salatich as her "top" candidate.

These two facts, amply supported by evidence, clearly demonstrate that Plaintiff was not the "top" candidate of any of the interview panel members. As a result, if Plaintiff's contentions are to be believed, not only was Ms. Purnell biased against her, so too were Ms. Tyce and Mr. Bell, since none of them considered her the "best qualified" candidate.

Insofar as the Court may deem it relevant, all three panel members, Ms. Purnell, Ms. Tyce and Mr. Bell are African-American, as is Plaintiff. Defendant's Material Fact No. 29, not disputed by Plaintiff.

As more fully set forth above, much of Plaintiff's "evidence" attempting to malign the interview and selection process for the subject position is either uncorroborated, false or Plaintiff's opinion of herself. One continuous theme in Plaintiff's Opposition is that, on paper, she was the "best qualified" candidate for the subject position. As pointed out above, Plaintiff completely ignores the interview process and how it may have impacted the panel in assessing the various candidates. In fact, Ms. Purnell's testimony, supra, demonstrates that Plaintiff's responses to certain interview questions did not support her stated qualifications.

In sum, Plaintiff has not met her burden of demonstrating that Defendant's explanation that Ms. Quattrone, not Plaintiff, was the "best qualified" candidate for the subject position, is a pretext for discrimination. Plaintiff has also failed to demonstrate that she was, instead, a victim or racial discrimination and reprisal.

Defendant submits that Plaintiff's claims herein, and each of them, are factually and legally unsupportable and should be summarily dismissed.

WHEREFORE, it is respectfully requested that this Honorable Court grant Defendant's Motion for Summary Judgment and that Plaintiff's complaint herein be dismissed.

    Respectfully submitted,

    /s/
    Victor E George
    Counsel
    550 17th Street, NW, Room VS-E6004
    Washington, DC 20429
    CA Bar No. 89595
    703-562-2395 (office)

703-562-2482 (fax)
vgeorge@fdic.gov

Daniel H. Kurtenbach
Counsel
550 17th Street, NW, Room VS-D7066
Washington, DC  20429
DC Bar No. 426590
703-562-2565 (office)
703-562-2475 (fax)
dkurtenbach@fdic.gov

15