UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DOROTHY CHAPPELL-JOHNSON,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | Civil Action No. 06-0314 (RCL) |
| v.    ) | |
| ) | |
| SHEILA M. BAIR,    ) | |
| Chairman,    ) | |
| Federal Deposit Insurance Corporation    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

**MEMORANDUM OPINION**

**I.    BACKGROUND**[1]

Plaintiff Dorothy Chappell-Johnson is African-American and was sixty years old when she brought the instant suit. (Comp. ¶4.) Defendant Sheila M. Bair, Chairman of the Federal Deposit Insurance Corporation ("FDIC"), is sued only in her official capacity.[2]

Ms. Chappell-Johnson has been employed by the FDIC since 1996. (Pl.'s Opp'n 2.) Between 1990 and 1996 she was employed by a predecessor of the FDIC, the Resolution Trust Corporation. (*Id.*) Since 1998 plaintiff has applied for and been denied multiple promotions at

---

[1]The Court notes that the exhibits filed with defendant's motion were identified by name but not individually numbered or labeled. For clarity, this opinion treats the exhibits as though numbered according to the document numbers assigned by the Court's ECF system. For example: defendant's Statement of Facts, though the first document attached to defendant's motion, is identified on the ECF system as the second document associated with docket item 15 – therefore the Court would refer to the Statement of Facts as Exhibit 2 to defendant's motion.

[2]Plaintiff originally named then-Acting Chairman of the FDIC Martin J. Gruenberg, in his official capacity. The Senate confirmed Ms. Bair as Chairman on August 17, 2006, after which she replaced Mr. Gruenberg as the defendant in this action.

the FDIC. (Pl.'s Opp'n 4.) Prior to the initiation of the underlying complaint, plaintiff had filed three separate complaints under the Equal Employment Opportunity ("EEO") process. (*See* Pl.'s Opp'n 4 (citing Def.'s Mem. Ex. 6, ¶4.))

In late 2003 the FDIC advertised a vacant position in the role of Human Resources Specialist (Information Systems and Compensation), for which plaintiff applied. (Pl.'s Opp'n Ex. 1, ¶3.) The position's advertisement listed the following "Quality Ranking Factors (Desirable Knowledge, Skills and Abilities)," ("the KSAs") as follows:

> 1. Knowledge of U.S. Office of Personnel Management regulations, guidelines, and pertinent laws concerning compensation and pay administration.
> 2. Knowledge of the National Finance Center (NFC) payroll/personnel system.
> 3. Ability to conduct comprehensive analyses of automated human resource information systems.
> 4. Ability to analyze, evaluate and make recommendations to senior level management officials.
> 5. Ability to establish and maintain customer service and smooth working relationships with a variety of offices and individuals at all levels.

(Pl.'s Opp'n Ex. 8, p.2-3.).

The parties do not dispute that four applicants were pre-rated as qualified for the position and subsequently interviewed by a panel. This interview panel was comprised of Ms. Shirley Y. Purnell ("Purnell"), an African-American female who was then fifty-three, Ms. Natalie Tyce ("Tyce"), also an African-American female who was then thirty-nine, and Mr. Eugene Bell ("Bell"), an African-American male who was then fifty three. (*See* Pl.'s Ex. 5; Def's Mem. Ex. 4; Def's Mem. Ex. 5.) The membership of the interview panel was determined by Purnell, who also served as the "selecting official" – the individual who would decide which candidate should be offered the position. (Pl.'s Mem. Ex. 5, ¶¶4-5.) Purnell was personally involved in the development of a settlement proposal related to one of plaintiff's prior EEO complaints. (Pl.'s

Opp'n Ex. 6, 173-76, 179-98.)

Plaintiff and the other candidates were apparently interviewed in February or March of 2005. It is also uncontested that after the interviews Ms. Purnell performed background checks on the two candidates whom one or more members of the interview panel deemed most qualified: Ms. Quattrone and Ms. Salatich.

Ms. Purnell formalized her selection of Ms. Quattrone for the subject position on March 5, 2004. (Pl.'s Opp'n Ex. 7.) On April 6, 2004 plaintiff was notified that she was not selected for the subject position. (Comp. ¶7.) Plaintiff filed the EEO complaint underlying the instant action on August 20, 2004. (*Id.* at ¶8.) The FDIC issued its Final Agency Decision regarding this matter on January 4, 2006, in which it found plaintiff was not discriminated against in any manner. (Def.'s Mem. 3-4.)

Plaintiff filed the instant action on February 22, 2006. All of plaintiff's claims are based upon her non-selection for the above-referenced position. Count I of the complaint alleges race discrimination in violation of Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000e-(16)a. Count II alleges age discrimination in violation of 29 U.S.C. § 633(a). Count III alleges plaintiff's non-selection was in retaliation for her prior protected activity; specifically, her prior EEO activity.

## II.  DISCUSSION

### A.  Legal Standard

A motion for summary judgment can only be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." Fed. R. Civ. P. 56(c). A moving party is "entitled to judgment as a matter of

law" against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

There is a genuine issue as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "If factual issues can 'reasonably be resolved in favor of either party,' there is a need for a trial." *Dunaway v. International Broth. of Teamsters*, 310 F.3d 758, 761 (D.C. Cir. 2002) (quoting *Anderson*, 477 U.S. at 250). For this reason, the court "should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). In deciding a motion for summary judgement, the court views the evidence in the light most favorable to the non-moving party and accords that party the benefit of all reasonable inferences. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Rule 56 of the Federal Rules of Civil procedure does not require the moving party to negate the non-movant's claims or to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Rather, when the movant files a properly supported motion for summary judgment, the burden shifts to the non-moving party to show "specific facts showing

that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Supreme Court has established a burden-shifting approach to employment discrimination claims in cases where the plaintiff lacks direct evidence of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This approach, the *McDonnell Douglas* framework, applies to both Title VII and ADEA claims. *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006) (citing *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)). To proceed under the *McDonnell Douglas* standard, a plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial [or age] discrimination." *McDonnell Douglas,* 411 U.S. at 802. On a defendant's motion for summary judgment, however, the Court need not evaluate whether the plaintiff has carried this burden. *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

Judge Kavanaugh's opinion in *Brady*, written for a unanimous panel of our Court of Appeals, sets out this Court's task quite succinctly:

> Lest there be any lingering uncertainty, we state the rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate non-discriminatory reason for the decision, the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?

*Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 511 (1993); *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714-16 (1983)). *See also Ginger v. Dist. of Columbia*, 527 F.3d 1340, 1344, 1346-47 (D.C. Cir. 2008) (reviewing district court's grant of summary

judgment without examining whether plaintiffs had made out a prima facie case of retaliation in Title VII case). Thus, the Court must first determine whether defendant has articulated a legitimate non-discriminatory reason for plaintiff's non-selection. *See id.*; *McDonnell Douglas*, 411 U.S. at 802. If so, the Court must then examine the evidence to determine whether a reasonable jury could find that this asserted reason is mere pretext, designed to conceal intentional race and/or age[3] discrimination.

### B.    Legitimate and Nondiscriminatory Reason

Here defendant has provided persuasive evidence that a legitimate and nondiscriminatory reason was the basis for its non-selection of plaintiff. It is uncontested that four applicants were interviewed and asked the same questions during the interview. The process largely followed the FDIC's "guidance" as to conducting the – optional – "best business practice," of naming an interview panel and conducting structured interviews. (*See* Pl.'s Mem. Ex. 8.) After the interviews, two of the three panelists – Purnell (the selecting official) and Bell – identified the selectee as their preferred candidate. (Pl.'s Mem. Ex. 5, ¶9; Pl.'s Mem Ex. 3, ¶). Prior to the interview, Mr. Bell did not know plaintiff and had no knowledge of her prior EEO complaints.

---

[3]*Brady* does not expressly hold that courts ruling on employer motions for summary judgment *in ADEA cases* should refrain from first assessing whether the plaintiff has made out a prima facie case. *See* 520 F.3d at 494 (mentioning only Title VII cases, involving alleged discrimination based on "race, color, religion, sex, or national origin"). Yet other courts in this district have nonetheless applied *Brady*'s rule to age discrimination cases. *See Simpson v. Leavitt*, 557 F. Supp. 2d 118, 126-27 (D.D.C. 2008) (Friedman, J.); *Short v. Chertoff*, 555 F. Supp. 2d 166, 172 (D.D.C. 2008) (Urbina, J.); *Daniels v. Tapella*, No. 05-2455, 2008 U.S. Dist. LEXIS 62768, at *12 (D.D.C. Aug. 18, 2008) (Kessler, J.); *Brantley v. Kempthorne*, No. 06-1137, 2008 U.S. Dist. LEXIS 38406, at *12-13 (D.D.C. May 13, 2008) (Huvelle, J.). And the Court of Appeals, itself, has employed *Brady*'s streamlined analytical framework in Americans with Disabilities Act lawsuits. *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008). Hence, this Court finds *Brady* equally applicable to plaintiff's age discrimination claims as to her race discrimination claims.

(Def.'s Mem. Ex. 5, ¶5.)

While the third member of the panel (Ms. Tyce) did not rank the selectee her first choice, she did indicate that the selectee's "application looked very good." (Def.'s Mem. Ex. 4, ¶9.) Notably, Ms. Tyce did not select plaintiff as her top choice either. (*Id.*) Thus, based on the uncontroverted record, *no* member of the interview panel would have selected plaintiff for the position. Thus, defendant has offered a legitimate, non-discriminatory reason for not selecting plaintiff. Simply put: *neither the selecting official nor the other two interviewers determined plaintiff to be the best applicant for the position.*

    **C.**    **Plaintiff has not Offered Evidence of Discrimination or Retaliation**

Because defendant has articulated an ostensibly legitimate, non-discriminatory reason for plaintiff's non-selection, "'the sole remaining issue is discrimination *vel non*.'" *Waterhouse v. District of Columbia*, 298 F.3d 989, 993 (D.C. Cir. 2002) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142-43 (2000)). The question becomes whether a reasonable jury could infer discrimination from:

> the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (en banc).[4] The Court will

---

[4]In *Brady*, the Court of Appeals provided several additional examples of "further evidence of discrimination," including "evidence suggesting the employer treated other employees of a different [age or race] . . . more favorably in the same factual circumstances"; evidence "that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision"; evidence of "changes and inconsistencies in the stated reasons for the adverse action"; and evidence that the employer "fail[ed] to follow established

consider each of these areas in turn.

### 1. Plaintiff's Prima Facie Case

Plaintiff's prima facie cases of discrimination and retaliation are weak. Under the relevant, extremely lenient standard, she raises an inference of discrimination with respect to race and age.[5] *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous."). She has also offered some evidence of "facts adequate to permit an inference of retaliatory motive."[6] *McKenna v. Weinberger*, 729 F.3d 783, 790 (D.C. Cir. 1984). While legally sufficient under the *McDonnell-Douglas* standard, however, these skeletal prima facie cases provide no additional support for an inference of discrimination.

### 2. Plaintiff's Evidence to Attack Proffered Explanation

Considering the second category in *Aka*, *supra*, plaintiff cites *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), for the proposition that "[u]sually, proffering evidence from which a jury could find that the employer's stated reasons were pretextual will be enough to get a plaintiff's claim to a jury." 407 F.3d at 413. In *George* the Circuit reversed a grant of summary judgment in favor of the defendant where the plaintiff had created a genuine issue as to whether defendant's

---

procedures or criteria." 520 F.3d at 495 n.3.

[5] Plaintiff is an African-American who was over age forty at all relevant times and thus belongs to a statutorily protected class. (Def.'s Mem. 6 n.4.) Given the circumstances, her non-selection triggers an inference of discrimination.

[6] In her affidavit, plaintiff asserts that her personnel file was signed out to Ms. Purnell at a time in close proximity to the interview and selection process. (Pl.'s Opp'n Ex. 1, ¶6.) Coupled with Purnell's testimony that she was personally involved in calculating figures for a possible settlement of one of plaintiff's prior EEO complaints, (Pl.'s Opp'n Ex. 6, 174), this permits an inference of discrimination.

proffered explanation for plaintiff's termination was pretext. *Id.* at 415. Specifically, the Court found that, because the plaintiff had provided "evidence that [the employer's] reasons [for the adverse personnel action were] not in fact true," and "evidence that, to the extent [the reasons] may be found to be true, they could not have formed the basis for" the personnel action. *Id.* Taken together, this evidence was deemed sufficient to enable a reasonable jury to decide that the defendant's proffered reasons were a pretext for discrimination. *Id.* at 415.

However, this Court does not find *George* directly applicable to the case at bar. In that case the defendant's stated reasons for the termination of the *George* plaintiff included that her "skills and conduct do not match the mission-based needs of this organization," "problems associated with her conduct and performance," including "problems interacting with other staff," and other deficiencies in performance. *Id.* at 413 (quoting plaintiff's letter of discharge). The *George* plaintiff had proffered evidence to cast doubt on the veracity of these claims. For example, the *George* court found that plaintiff's prior performance reports tended "to refute the suggestion [plaintiff] had problems on the job." *Id.* at 414. The deposition testimony of other involved employees also cast doubt on the defendant's assertion that the plaintiff had problems interacting in the workplace. *Id.*

In the case at bar, defendant asserts that plaintiff was not chosen for the subject position *because another candidate was deemed more qualified*. (*See, e.g.,* Def.'s Mem. Ex. 3, ¶7.) "Once the employer has articulated a non-discriminatory explanation for its action . . . the issue is not 'the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers.'" *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *McCoy v. WGN Continental Broadcasting Co.*, 957

F.2d 368, 373 (7th Cir. 1992)). Stating the issue another way, the *George* court explained that the defendant in that case "could prevail on its motion for summary judgment, despite a genuine dispute over the objective validity of its reasons, if it were able to demonstrate the absence of a genuine dispute in the record over whether [the defendant] honestly and reasonably believed in those reasons." *George*, 407 F.3d at 415.

While Chappell-Johnson has offered evidence aimed at proving she was, in fact, the most qualified applicant for the position, and argues the question of her qualifications and those of the selectee are genuine issues material to the resolution of her claims (*see* Pl.'s Opp'n Ex. 1, pp. 2-4), she does not contest that none of the members of the interview panel considered her the most qualified applicant.

Plaintiff's evidence that she was the superior candidate – which consists primarily of her own assertion to that effect, coupled with the very application materials previously available to the interview panel – thus does not refute the stated reason for her non-selection: that neither the selecting official nor the other members of the interview panel deemed her most qualified. As another District Court of this Circuit has stated the matter:

> Where a plaintiff's qualifications are so vastly superior than the selectee's, this may be considered as evidence of pretext, casting doubt on the legitimate, non-discriminatory explanation offered by the employer and creating a question of material fact. However, a plaintiff cannot satisfy her burden of demonstrating pretext simply based on her own subjective assessment of her own performance. A plaintiff has the duty to put forth evidence of discrimination, not to quibble about the candidates' relative qualifications. In the absence of any other evidence that would allow a jury to infer that discrimination took place, slight questions of comparative qualifications do not warrant a jury trial.

*Hammond v. Chao*, 383 F.Supp.2d 47, 57 (D.D.C. 2005) (quotations and citations omitted). Plaintiff's evidence of pretext is thus both extremely weak to begin with, *and* fails to refute that

*defendant* did not believe that plaintiff was the most qualified. Instead it speaks to the secondary issue of whether a reasonable jury could have reached a different conclusion than the interview panel and selecting official. However, "[t]itle VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" *Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986)).

Plaintiff also questions the selection process itself, arguing first that Purnell was improperly dismissive of her resume and experience during the interview and selection process. (*See* Pl.'s Opp'n 12-14.) In a related vein, plaintiff argues that the interview panel process was conducted unfairly[7] in that not all of the KSAs were addressed in the structured questions. (*See id.*) Plaintiff specifically criticizes the fact that, after the interviews, Purnell performed background checks on only the top two candidates identified in the interview process and therefore that plaintiff "was the only candidate whose application was deliberately not fully considered by Purnell." (Pl.'s Opp'n 14.).

In evaluating this line of argument, the Court is mindful that, "[e]ven if a court suspects that a job applicant 'was victimized by [ ] poor selection procedures' it may not 'second-guess an employer's personnel decision absent *demonstrably discriminatory motive*.'" *Fischbach v. District of Columbia Dept. of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (emphasis added) (quoting *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir.1982)). To show such a

---

[7]The Court notes that, in arguing that the interview process was unfairly conducted, the plaintiff attempts to rely upon portions of an affidavit text that was struck through by the affiant, and thus not included in the final affidavit. (*See* Pl.'s Opp'n 5-6, 11.) The Court does not consider text that is not part of the final affidavit.

discriminatory motive plaintiff essentially asserts that the fact that she believes she was the most qualified applicant, combined with her non-selection is, in and of itself, evidence of discriminatory intent. If this Court were to adopt plaintiff's argument, it would essentially decree that – notwithstanding any tentative decisions it has reached through an interview process – an employer must conduct background checks on all applicants or none at all, or create a reasonable inference of discrimination sufficient to warrant a jury trial. The precedent would be more extreme in the instant case, in which plaintiff's subjective belief in her superior qualifications was not shared by *any* of the interviewers. An alternative, but equally unacceptable interpretation of such a ruling would conclude that – even in the absence of evidence of discrimination – an employer's use of an interview panel to winnow the number of applicants for a position creates an inference of discrimination sufficient to warrant a jury trial.

This Court is unwilling to say that a plaintiff can survive a motion for summary judgment without providing any evidence of discriminatory intent, but simply by proffering evidence that a different selecting official (and interview panel) could have made a different decision. Of course, the real issue is whether there has been discrimination or retaliation, *not* whether a reasonable individual could have made a different selection. Plaintiff's asserted evidence of pretext is insufficient to enable a reasonable jury to infer discrimination.

### 3. Other Evidence Regarding Discrimination

Turning to "any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment)," *Aka*, 156 F.3d at 1289, other than as

discussed above, plaintiff has not called the Court's attention to other evidence that would enable a reasonable jury to infer discrimination.

In considering this category of evidence, and the *Aka* framework, the Court recalls our Circuit's observation that:

> there may be no legitimate jury question as to discrimination in a case in which a plaintiff has created only a weak issue of material fact as to whether the employer's explanation is untrue, and there is abundant independent evidence in the record that no discrimination has occurred.

*Aka*, 156 F.3d at 1291. In the instant case, the failure of any member of the panel to identify plaintiff as his or her preferred candidate strikes this Court as "abundant independent evidence in the record that no discrimination has occurred." Discussing the Supreme Court's then-recent decision in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993), with reference to what might constitute "abundant evidence in the record that no discrimination has occurred," the Circuit in *Aka* continued:

> The *Hicks* Court cited the example of a situation in which the hiring officer, as well as 40% of the employer's work force, were members of the same minority group as the plaintiff (even though the group in question comprised only 10% of the relevant labor market). Where an employer has a strong record of equal opportunity employment, any inference of discrimination arising from the discrediting of the employer's explanation may be a weak one, and in some cases not strong enough to let a reasonable factfinder conclude that discrimination has occurred at all.
>
> Accordingly, as we read *Hicks*, the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case; in some instances, as we have pointed out, the fact that there are material questions as to whether the employer has given the real explanation will not suffice to support an inference of discrimination. It is obviously impossible to provide an exhaustive list of such situations.

*Aka*, 156 F.3d at 1291. Though not precisely on point, this guidance from our Circuit appears relevant – though not dispositive – in the instant case, particularly with respect to Counts I and II.

Specifically, it is uncontested that all three members of plaintiff's interview panel were African American. Thus, 100% of the panel were members of the same protected class against which Count I alleges discrimination. Further, two of the three members of the panel were over forty – and thus members of the protected class recognized in Count II. The remaining member was less than a year shy of entering this class.

Turning to an issue discussed above more directly, though it does not appear to be a full and complete record of Ms. Purnell's prior hiring decisions, the only relevant evidence in the record suggests no pattern of discrimination in Ms. Purnell's prior hiring activites. (*See* Def.'s Mem. Ex. 7, ¶17.)

### III.    CONCLUSION

After the *McDonnell-Douglas* presumption of discrimination has dropped out, the sum total of plaintiff's evidence, taken in combination, is simply not enough to survive the instant motion for summary judgment. Accordingly, defendant's motion is GRANTED.

A separate order shall issue this day.

SO ORDERED.


Signed by Royce C. Lamberth, Chief Judge, September 3, 2008.